841 So.2d 158 (2002)
William Alton HESTER a/k/a William Alton Hester, Sr., Appellant,
v.
STATE of Mississippi, Appellee.
No. 2001-KA-00513-COA.
Court of Appeals of Mississippi.
October 29, 2002.
Rehearing Denied December 17, 2002.
Certiorari Denied March 27, 2003.
*159 Ross Parker Simons, attorney for appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, attorney for appellee.
Before McMILLIN, C.J., MYERS and CHANDLER, JJ.
McMILLIN, C.J., for the Court.
¶ 1. William Hester was convicted of murder after a jury trial in the Circuit Court of Jackson County. On appeal he alleges these errors: (1) in different ways the grant of a manslaughter instruction violated his due process rights; (2) evidence of previous threats of violence by the victim should have been admitted to prove his violent character; (3) a mistrial should have been granted for a discovery *160 violation; and (4) in the event that his conviction is affirmed, we should remand for re-sentencing for manslaughter. We find no error in any of these claims and affirm.

I.

Facts
¶ 2. On June 20, 2000, William Hester shot and killed Jimmy Dean McFall during an altercation at the trailer of Hester's son Anthony. McFall's wife had been living with Anthony for the ten-day period prior to the shooting. Hester and McFall lived in adjacent mobile homes in the same mobile home park. The day of the shooting, McFall went to Anthony's trailer to speak with his wife. The elder Hester met him at the door and they argued. Hester verbally backed McFall off the porch, through the yard, and outside of the fence surrounding the property. Then Hester went to his truck to retrieve his gun which he then used to shoot McFall four times. Hester claimed that he was acting in self-defense as he believed McFall was reaching for a weapon in his pocket. Hester was convicted of murder and sentenced to life.

II.

Due Process Guarantees and the Right to a Fundamentally Fair Trial
1. Lesser-Included Offense Instruction
¶ 3. Hester's counsel examined State witnesses and presented his own evidence to support that Hester was acting in self-defense. He argues that the State's obtaining an instruction on the lesser-included offense of manslaughter negated his self-defense strategy. In summary, Hester allegedly was unable to present his own defense, the jury was made to believe that the State's theory of manslaughter was his own theory, and he was denied a fundamentally fair trial as a result.
A defendant does not have the power to block lesser-included offense instructions.
We recognize in certain cases, as a matter of trial strategy, defense counsel may wish to have the case put to the jury on an all or nothing basis, the jury's alternatives being to find the defendant guilty as charged in the indictment or acquitted. Our law, however, allows the prosecution to request and obtain lesser-included offense instructions, as it does the defense.
Harveston v. State, 493 So.2d 365, 375 (Miss.1986).
¶ 4. The principal requirement for allowing a lesser-included-offense instruction is that there be evidence to support it. Id. Evidence at this trial revealed that McFall's wife was living next door to McFall with the younger Hester. An altercation occurred when McFall went to confront her. There was some evidence that the elder Hester believed McFall was reaching for a weapon. That might be self-defense. There was also evidence that the older Hester was worried about his son and drove to his mobile home to protect him. There was a loud though only verbal confrontation at the door of the son's trailer between William Hester and McFall. The manslaughter instruction required that Hester have been acting without intent and in the heat of passion. This form of manslaughter has been said to require sudden terror or anger arising from sufficient provocation:
A state of violent and uncontrollable rage engendered by a blow or certain other provocation given, which will reduce a homicide from the grade of murder to that of manslaughter. Passion or anger suddenly aroused at the time by some immediate and reasonable provocation, *161 by words or acts of one at the time. The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment or terror.
Simmons v. State, 805 So.2d 452, 473 (¶ 31) (Miss.2001). Despite language such as in Simmons, it has also been held that words alone do not suffice to require a heat-of-passion instruction. Gates v. State, 484 So.2d 1002, 1005 (Miss.1986).
¶ 5. Hester relies on two cases to support his argument that the manslaughter instruction should not have been given. In one, a conviction was reversed because the State had obtained a self-defense instruction that the accused did not want, as his defense was accident. Taylor v. State, 597 So.2d 192, 195 (Miss.1992). "The [self-defense] instruction, considered by itself, deflects the jury's attention from accident as the defense. [Jurors] cannot read the instruction without forming the opinion that the principal defense to be considered is self-defense." Id. at 194. The court held that after reviewing all the instructions, none in isolation, the jurors might have become confused about self-defense. When "evidence is somewhat circumstantial and inconclusive, and where the [c]ourt has substantially instructed the jury that it consider a matter extraneous to the process, the risk of a misdirected verdict becomes intolerably high." Id. at 195. That approach was followed by this Court when in a later case, the State had added language about the homicide not being in necessary self-defense to the manslaughter instructions requested by the defendant. Kelly v. State, 735 So.2d 1071, 1088 (¶ 49) (Miss.Ct.App.1999). Kelly's defense was alibi. This Court found that the gratuitous self-defense language, which obviously required the defendant's presence at the homicide, created too great a danger of deflecting jurors' attention from the actual defense. Id.
¶ 6. We do not find a similar risk in the present case of the jurors becoming deflected from their proper course. A defense of accident or alibi is inconsistent with self-defense in a way that heat-of-passion is not. We acknowledge that we are comparing a complete defense (self-defense or alibi) with a lessening of culpability (heat-of-passion), but we find that the considerations are the same on whether the jurors are likely to become confused. Whether Hester was completely exonerated because of a legitimate threat to him, or whether his reaction to events was still criminal but lessened by the heat-of-passion, are not self-cancelling in the manner of the precedents.
¶ 7. We are still concerned that the evidence for heat-of-passion was not readily perceivable. Even so, the supreme court has found that the State's receiving a manslaughter instruction cannot create reversible error when there is evidence to support and the jury convicts for murder:
Accepting that it may be difficult to squeeze the facts before us within any legally accepted definition of manslaughter, we have held in a number of cases and in a wide variety of context that, where there is in the record evidence legally sufficient to support a finding of guilty of murder, had the jury so found, the defendant will not be heard to complain that a manslaughter instruction was given. Jackson v. State, 551 So.2d 132, 146 (Miss.1989); Crawford v. State, 515 So.2d 936, 938 (Miss.1987). Today's is such a case.
Fowler v. State, 566 So.2d 1194, 1201 (Miss.1990).
¶ 8. The manslaughter instruction is challenged on other grounds as well. Those follow.
*162 2. Felony Charge not Heard by the Grand Jury
¶ 9. Hester argues that an instruction on the felony of manslaughter could not be given to the jury because he could be charged with a felony only by indictment. However, by statute, it is provided that an indictment for all the elements of a greater offense also indicts on lesser offenses necessarily included in the greater. Miss.Code Ann. § 99-19-5 (Rev.2000). No new indictment was necessary for manslaughter.
3. Manslaughter as a Lesser-Included Offense of Murder
¶ 10. Hester argues that though normally manslaughter is a lesser offense than murder, it was not so here. Under his argument, then, charging manslaughter in this case cannot be supported by the caselaw on lesser-included offenses.
¶ 11. Hester's point is that the practical effect of sentencing rules on the two offenses, when applied to him at age fifty-six, makes manslaughter the longer sentence. Hester could have received a twenty year sentence for manslaughter. Miss. Code Ann. § 97-3-25 (Rev.2000). Because of the operation of earned time rules, he would have become eligible for release after serving eighty-five percent of the sentence, or seventeen years. For murder, however, Hester had to receive a life sentence. Miss.Code Ann. § 97-3-21 (Rev. 2000). Someone sentenced to life imprisonment may petition for release once he is at least sixty-five years of age and has served fifteen years of the sentence. After serving fifteen years, Hester would be over age sixty-five. Thus the "life" sentence for murder could result in less time served than for manslaughter.
¶ 12. We find no need to consider today whether the occasional operation of probation, parole, and earned-time rules applicable to sentences are part of the analysis of whether a lesser-included offense instruction may be given. A lesser-included offense has these characteristics:
In order to authorize [a lesser-included-offense] instruction the more serious offense must include all the elements of the lesser offense, that is, it is impossible to commit the greater offense without at the same time committing the lesser included offense.
Shannon v. State, 739 So.2d 468 (¶ 10) (Miss.Ct.App.1999), quoting Sanders v. State, 479 So.2d 1097, 1098 (Miss.1985). Under that test, manslaughter is a lesser-included offense of murder.
¶ 13. The sentencing variables are irrelevant in this case because, having been convicted of murder, Hester cannot complain about the manslaughter instruction. Fowler, 566 So.2d at 1201.
4. Violation of due process for State to present defense theory
¶ 14. In something of a summary argument, Hester argues that the handling of the manslaughter instruction violated his rights to a fundamentally fair trial. He relies on precedents that announce the general rule that a defendant is entitled to a fair and impartial trial. Adams v. State, 202 Miss. 68, 78, 30 So.2d 593, 598 (1947). The basic point argued by Hester is that the manslaughter instruction was a gambit by the State to mislead the jurors as to the self-defense evidence. We understand Hester's argument, but do not find it supported here. We have discussed each element of the challenge to the manslaughter instruction. Though we have noted the weakness of the evidence to support it, we also do not find that the manslaughter instruction misled the jurors on self-defense. The argument would have greater impact if Hester had been *163 convicted of manslaughter. This would not demonstrate that jurors were misled, but might have constituted an opportunity for a compromise verdict on an offense that was not supported by the evidence.

III.

Admissibility of Threats of Violence Made by the Victim
¶ 15. Hester proffered a witness who would testify that she had once ridden in an automobile with the victim McFall and while stopped, another vehicle pulled up alongside. The occupants of that vehicle successfully irritated McFall such that after arguing with them for awhile, McFall told them that he would get his gun and shoot. He reached for the glove box as if to get a gun. The others sped away. The witness during the proffer stated that McFall did not actually have a gun and it was only a threat. The court ruled that this was inadmissible.
¶ 16. Evidence of a relevant trait of the victim's character may be introduced to show that the victim was the first aggressor. M.R.E. 404(a)(2). The next evidentiary rule provides that when character of a person is relevant, "proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into specific instances of conduct." M.R.E. 405(a). Thus under that rule, the witness could not describe the incident but could only say whether McFall had a reputation for violence or whether it was her opinion that he was violent. There is one more exception, however. When the character of a person "is an essential element of a charge, claim, or defense," specific instances of conduct are admissible. M.R.E. 405(b). Under that section, it has been held that specific incidents demonstrating a victim's propensity for violence are admissible when there is a claim of self-defense. Newsom v. State, 629 So.2d 611, 614 (Miss.1993).
¶ 17. The trait does not become relevant until some evidence of an overt act by the victim against the defendant is introduced. Womack v. State, 774 So.2d 476 (¶ 26) (Miss.Ct.App.2000). Once proving the act, the defendant may then offer proof of the victim's character. Green v. State, 614 So.2d 926, 934 (Miss. 1992). Hester argues that evidence of an overt act is in the record. McFall came to Anthony Hester's trailer. The defendant William Hester testified that he thought that the bulge in McFall's pocket was a small handgun that he knew McFall had gotten from a pawn shop earlier that day. He also thought that during the argument, McFall was reaching for the supposed gun. We find that the judge must have accepted that McFall had committed an overt act, since he ruled that character evidence in proper form would be admissible. After the argument on the State's objection to the proffered evidence, the judge said that evidence of the victim's prior acts of violence were admissible. "I think that pulling a gun is a specific instance of conduct that should be admissible," but just bluffing about taking a gun from the glove compartment would not be. The judge stated, "So if you want to use character evidence ... specific instances of prior conduct to the victim, you may do so."
¶ 18. Based on this distinctionproof of actual violent acts is admissible, idle threats of it are notthe judge excluded the evidence. What that vignette showed was that McFall was willing to try to frighten those in an adjacent automobile who likely were unarmed. A character for acting tough does not assist the jury on whether McFall was violent in fact. Hester had gotten a gun after backing McFall away from the mobile home. Hester then was holding that gun openly in his hand. *164 Whether the victim was willing to act violently when there was no perceptible danger is not probative that he was a violent man likely to start a confrontation when the stakes were much higher.
¶ 19. The evidence was properly rejected.

IV.

Motion for Mistrial for State's Attempt to Introduce Undiscovered Evidence
¶ 20. The State questioned Hester on cross-examination about whether he had ever boasted to a neighbor, such as whether he had said, "By God, if you do not leave us alone I'm going to do thus and such." Several efforts at getting an admission were made, and then the State asked specifically about whether he had such a conversation with a neighbor named Bonnie Bradley. Hester kept denying, and finally the line of questioning was halted. Out of the presence of the jury, the State indicated that Bradley had been interviewed by their investigator. She told the investigator that prior to the shooting Hester had said "ain't nobody going to bother her," referring to McFall's wife who was now living with Hester's son. The prosecution withdrew its attempt to have the statement admitted into evidence. Hester argues that a mistrial should have been declared.
¶ 21. Hester argues that this was a discovery violation. The trial judge agreed and followed the procedures for addressing one party's effort to use evidence that it had failed to disclose to the other after proper discovery request. URCCC 9.04 I. The defense was offered an opportunity to interview the witness who had talked to the investigator, but she was not at the courthouse. Rather than take a lengthy recess, the State said that it would stop further inquiry and not use the evidence. What that offer did is move the proceeding directly into the part of the rule that states the "court shall not be required to grant either a continuance or mistrial for such a discovery violation if the prosecution withdraws its efforts to introduce such evidence." URCCC 9.04 I. 3. The judge then admonished jurors to disregard the questioning that they had been hearing just before the break. The court reporter noted that "jurors nod in the affirmative" that they all agreed to disregard the questions.
¶ 22. A trial judge is granted wide discretion in the granting of a mistrial. The presumption is that jurors follow the instructions given by the court to dissipate any prejudice. Crenshaw v. State, 520 So.2d 131, 134 (Miss.1988). We find no reason to apply a different rule here.

V.

Re-sentencing Under the Manslaughter Statute
¶ 23. Hester requests in the alternative that we conclude that as a matter of law this evidence would only support a conviction for manslaughter. We have detailed the evidence and find that a conviction for murder was consistent with the proof. We affirm.
¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JACKSON COUNTY.
KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.