876 So.2d 400 (2003)
Morris FORREST a/k/a Bookie a/k/a Booke, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2002-KA-00683-COA.
Court of Appeals of Mississippi.
October 14, 2003.
Rehearing Denied January 20, 2004.
*402 Leslie Jones Martin, Natchez, attorney for appellant.
Office of the Attorney General by Billy L. Gore, attorney for appellee.
EN BANC.
LEE, J., for the Court.

PROCEDURAL HISTORY
¶ 1. On April 17, 2002, Morris Forrest was convicted of the sale of a controlled substance, cocaine, by a jury in the Montgomery County Circuit Court. Forrest was charged and convicted as a second or subsequent offender under the sentence enhancement provisions of Mississippi Code Annotated Section 41-29-147 (Rev.2001), and received twenty-five years to be served in the custody of the Mississippi Department of Corrections. Forrest now appeals to this Court asserting the following issues: (1) the lower court erred in failing to enforce rules established by Batson v. Kentucky by allowing the State to use all of its peremptory challenges on prospective black jurors; (2) the lower court erred in allowing the State to introduce evidence of crimes not charged against him; (3) the lower court erred in allowing the testimony of two eyewitnesses when their credibility was sufficiently impeached and when their testimony provided the only basis for the jury's conviction.

FACTS
¶ 2. Forrest was the subject of a controlled buy operation. On May 23, 2001, Forrest picked up Dorris Faye Banks at a store in Winona. They proceeded to the Hitching Post Motel, where they drove to the rear of the building. Steven Solomon, the undercover agent in charge of the controlled buy operation, and Chris Blaylock, the confidential informant, drove in and parked next to Forrest's car. Blaylock left the car, walked over to the driver's side of Forrest's car, introduced Solomon to Forrest and Banks, and then asked Forrest if "he had the stuff." Forrest was seen counting out the "stuff" and pouring it into his own hands. After receiving the cocaine from Forrest, Banks then got out of Forrest's car and handed Solomon fifteen rocks of crack cocaine. Solomon gave Banks $300, which she proceeded to give to Forrest. This transaction was recorded on audiotape and played for the jury.

DISCUSSION OF ISSUES

I. DID A BATSON VIOLATION OCCUR IN ALLOWING THE STATE TO USE ALL OF ITS PEREMPTORY CHALLENGES ON BLACK PROSPECTIVE JURORS?
¶ 3. With his first issue, Forrest, who is a black male, claims that the State used all four of its peremptory challenges to exclude prospective black jurors. Forrest also contends that the race-neutral reasons supplied by the State for excusing these four black jurors was inadequate and no outside proof was offered to substantiate its reasons. Our standard of review requires a reversal only if the factual findings *403 of the trial judge are "clearly erroneous or against the overwhelming weight of the evidence." Tanner v. State, 764 So.2d 385 (¶ 14) (Miss.2000). Any determination made by a trial judge under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), is accorded great deference because it is "based, in a large part, on credibility." Coleman v. State, 697 So.2d 777, 785 (Miss.1997). The term "great deference" has been defined in the Batson context as meaning an insulation from appellate reversal of any trial findings which are not clearly erroneous. Lockett v. State, 517 So.2d 1346, 1349 (Miss.1987).
¶ 4. The Batson decision provides procedural directives for the trial court to follow in detecting and disallowing the practice of using peremptory challenges to remove members of an identified racial group from jury service based upon nothing more than their racial identification. To successfully assert a Batson claim, the following procedure must occur:
First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.
Berry v. State, 728 So.2d 568 (¶ 11) (Miss.1999) (citing Hernandez v. New York, 500 U.S. 352, 358-59, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)). "When the prosecution gives race-neutral reasons for its peremptory strikes, the sufficiency of the defendant's prima facie case becomes moot." Manning v. State, 735 So.2d 323 (¶ 28) (Miss.1999). Furthermore, if the defendant offers no rebuttal, the trial court may base its decision solely on those reasons given by the prosecution. Id. at (¶ 29).
¶ 5. As is the proper procedure, Forrest objected to the State's exercising its peremptory challenges against prospective black jurors. The judge noted that all of the State's strikes were against black females and ruled that Forrest had made a prima facie case. The prosecution then proceeded with its racially-neutral reasons for doing so as required by Batson.
¶ 6. The prosecution's first peremptory challenge was exercised against juror number four, Gina Bays. The prosecution stated that when Forrest walked into the courtroom during jury selection, he smiled and waved at Miss Bays and she responded by smiling and waving back at him. Miss Bays admitted that she was related to Forrest, that she sees Forrest regularly, and that she was also the cousin of his girlfriend. The prosecution also stated that it had information that Miss Bays was involved in drug trafficking with Forrest. After hearing these reasons and with no rebuttal by the defendant, the judge found these reasons to be race-neutral. As the Mississippi Supreme Court has held that knowing the defendant is a sufficiently race-neutral reason for challenging potential jurors, we cannot find that the judge was in error in accepting the prosecution's reasons. See Porter v. State, 616 So.2d 899, 907 (Miss.1993); Griffin v. State, 607 So.2d 1197, 1203 (Miss.1992).
¶ 7. The second peremptory challenge was used against juror number five, Miss Robinson. The prosecution stated that Miss Robinson had two outstanding warrants for her arrest at the time of the venire. The prosecution believed the warrants charged Miss Robinson with false pretense. Forrest's rebuttal claimed that being charged with a crime is no reason to exclude a potential juror. The judge then noted that, although this reason would not *404 suffice to excuse Miss Robinson for cause, it was a sufficiently race-neutral reason to survive a Batson challenge. We cannot find that the judge erred in accepting the prosecution's peremptory challenge to Miss Robinson.
¶ 8. The third peremptory challenge was used against juror number twelve, Lisa Woods Herman. The prosecution struck Miss Herman because she was an alderman for the City of Duck Hill. The prosecution stated that it was familiar with Miss Herman's public opinions because she had "been in the paper, been a lot of controversy, a lot of turmoil about the police department, law enforcement." Forrest's only rebuttal was to claim that Batson prohibits the State from challenging black jurors. The judge noted that over the years Batson had been expanded to include more valid race-neutral reasons and that the reason provided by the prosecution was sufficiently race-neutral to survive a challenge. We cannot find that the judge was in error by accepting the prosecution's peremptory challenge against this particular juror.
¶ 9. The fourth and final peremptory challenge was used to strike juror number fifteen, Miss Evangeline Simpson. The prosecution struck Miss Simpson because she had been friends with Forrest's mother for years. The prosecution also stated that it believed Miss Simpson was related to Maurice Simpson, an escaped fugitive, and that she was related to Forrest because her maiden name was Forrest. Forrest's only rebuttal was similar to his rebuttal with Miss Herman, that Batson prohibits the State from challenging black jurors. The judge found that knowing Forrest's mother was a sufficient race-neutral reason to strike Miss Simpson. As the supreme court has also held that knowing the defendant's mother is a valid race-neutral reason for striking a juror, we cannot find that the judge erred in accepting the prosecution's peremptory challenge. See Jasper v. State, 759 So.2d 1136 (¶ 15) (Miss.1999); Manning v. State, 735 So.2d 323 (¶ 32) (Miss.1999).
¶ 10. We find no evidence that the trial judge acted erroneously in allowing the prosecution's peremptory challenges to stand; thus, this issue is without merit.

II. DID THE LOWER COURT ERR IN ALLOWING THE STATE TO INTRODUCE EVIDENCE OF CRIMES NOT CHARGED AGAINST FORREST?
¶ 11. With his second issue, Forrest contends that other crimes not charged against him were heard by the jury through the playing of an audiotape, the testimony of a witness, and a remark made by the State during their closing argument. Forrest initially made three motions in limine, of which one is at issue. The motion in limine requested that there be no mention of any crimes not charged against him. Forrest wanted to keep Blaylock, the confidential informant, from testifying that he knew Forrest from past drug purchases. The State responded that its proof would be limited to show Blaylock knew Forrest, but not due to past drug purchases. The lower court sustained this motion in limine and instructed the State to inform Blaylock not to mention any crimes other than the one charged.
¶ 12. One of Forrest's arguments is that on the audiotape of the crime, Blaylock stated that he was calling Forrest because he had bought drugs from him before. However, during the trial, Forrest stated that he had listened to the entire tape and had no objection to the tape being introduced into evidence. In fact, Forrest wanted the tape presented to the jury in its entirety and never objected while it was playing. We cannot find error *405 where Forrest has objected to the information contained on the audiotape for the first time on appeal to this Court.
¶ 13. Forrest also mentions the testimony of Solomon, the undercover agent, as another instance where his prior criminal acts were mentioned. In response to the State's question, "What was the purpose of having the confidential informant there?", Solomon replied, "To introduce myself to members of the community who might be selling drugs." There was never any contemporaneous objection by Forrest to this statement and we fail to see how this reply by Solomon would necessitate a mistrial.
¶ 14. The last argument by Forrest is that the State made improper remarks concerning prior criminal acts during its closing argument. The remarks Forrest refers to consist of blanket statements about drug dealers being paranoid and only wanting to sell to people they know. Once again Forrest failed to object to this statement and we also fail to see how these statements would necessitate a mistrial.
¶ 15. We must make note of the fact that, while on the stand in his own defense, Forrest admitted to having been convicted of a previous drug offense and that he was on probation when the sale in question occurred. Even though Forrest admitted to a prior drug crime conviction, the lower court called for a limiting instruction and polled each member of the jury to make certain they would not consider this previous conviction in determining his guilt or innocence. We can only conclude that any prejudice resulting from any of these statements, the most prejudicial of which was made by Forrest himself, was cured upon the polling of the jury and the addition of a limiting instruction.

III. DID THE LOWER COURT ERR IN ALLOWING THE TESTIMONY OF TWO WITNESSES WHERE THEIR CREDIBILITY WAS IMPEACHED AND WHERE THEIR TESTIMONY PROVIDED THE ONLY BASIS FOR THE JURY'S CONVICTION?
¶ 16. In his last issue, Forrest contends that his conviction should be reversed for lack of credible evidence based on two reasons: first, that Solomon did not actually see Forrest in possession of the cocaine, and second, that the testimony of Blaylock and Banks was successfully impeached and should have been excluded. As Forrest argues that the jury verdict was against the overwhelming weight of the evidence, we look to our standard of review.
In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal.
Dudley v. State, 719 So.2d 180 (¶ 8) (Miss.1998).
¶ 17. Forrest claims that he successfully impeached the testimony of Blaylock and Banks because they each admitted on the witness stand that they suffered from drug addiction, had been previously convicted of crimes, and were both receiving a benefit from testifying against Forrest. However, Forrest goes no further in this argument beyond his conclusory assertion that the witnesses were impeached nor does he point to any portion of the record that demonstrates the complete impeachment of these witnesses' credibility. The only specific part of the record Forrest mentions concerns Blaylock's being paid *406 for his services as a confidential informant and Bank's pleading guilty to the same crime charged against Forrest.
¶ 18. However, it is the duty of the jury to consider all the evidence before it, including that evidence which tends to impeach a witness's credibility, and then to decide what weight and worth to give to any particular witness's testimony. Quay v. Archie L. Crawford and Shippers Exp., Inc., 788 So.2d 76 (¶ 30) (Miss.Ct.App.2001). Once the jury resolves any differences presented by the evidence, both the trial court and appellate court are obligated to give substantial deference to the jury's decision. Estes v. State, 782 So.2d 1244 (¶ 28) (Miss.Ct.App.2000). In this case, the jury chose to believe the testimony of Blaylock and Banks implicating Forrest in the crime. We cannot find that the credibility of Blaylock and Banks was impeached such that no rational juror could possibly accept their statements as true. The jury believed Blaylock, Banks, and Solomon, and, therefore, we find Forrest's claim that the verdict was against the overwhelming weight of the evidence to be without merit.
¶ 19. THE JUDGMENT OF THE MONTGOMERY COUNTY CIRCUIT COURT OF CONVICTION OF SALE OF A CONTROLLED SUBSTANCE AND ENHANCED SENTENCE OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF THIS APPEAL ARE TAXED TO MONTGOMERY COUNTY.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, THOMAS, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR. KING, P.J., DISSENTS WITH A SEPARATE WRITTEN OPINION JOINED BY IRVING, J.
KING, P.J., Dissenting.
¶ 20. With appropriate regard for the majority, I believe that it has erred, and I therefore dissent.
¶ 21. The majority states that it finds no fault with the trial judge's handling of the defendant's Batson objection. Such a position is in my judgment wrong.
¶ 22. In reviewing this matter, perhaps it is best to read the actual relevant portions of the transcript on jury selection. That information, which is contained in the trial transcript, is as follows:
BY MR. HILL: Yes, sir. Your Honor, as to juror number 4, which was State's peremptory challenge number one, Gina Marie Bays, the first thing that drew my attention to her this morning is that she was seated on the front row with the jury panel. When the defendant walked in, he walked to her, smiled at her and waved at her. She smiled, made eye contact with him and smiled and waved back at him.
I immediately knew then that they were at least acquainted. Upon questioning her, she admitted that she smiled and waved at him and admitted she knew him. She is a friend of his girlfriend. She is related to him, blood relation to him. I have information that she isa  involved in drug trafficking with the defendant. And for that reason  for those reasons, I don't want her on the jury.
BY THE COURT: Rebuttal?
BY MR. FRANKLIN: (no response)
BY THE COURT: Rebuttal?
BY MR. FRANKLIN: No, sir.
BY THE COURT: Okay. I find that is race-neutral. Number five, Miss Robinson.
BY MR. HILL: I am informed that Miss Robinson has two active and outstanding *407 warrants for her arrest right now. I think they are for false pretense. I have not investigated  I hadn't seen the actual warrants, but I have talked with people in law enforcement who tell me they were looking for her to arrest her and brought it to their attention her name was on this list. We have two outstanding warrants for her arrest, I believe, for false pretense. For that reason, I don't want her on the jury.
BY MR. FRANKLIN: Your Honor, I would like to make rebuttal to that. This witness  I mean this prospective juror has been through all of the examinations by all of us. She has not answered one question that I have a note about on my notes. I don't believe she opened her mouth.
The fact that a person who sits on a jury panel is accused of a crime is no reason to, to challenge her. You wouldn't grant that challenge for cause. Because she is one of four of this defendant's race that have been selectively excluded from hearing this case, we don't believe that is a race neutral reason.
Certainly, we would object to that. I don't think what he just said meets the criteria under Batson for giving race-neutral reasons. This is a black female who never opened her mouth. And simply because the fact she is accused or charged with a crime is absolutely no reason for exclusionary challenge under Batson in this case for trial.
BY THE COURT: Well, it wouldn't for cause, but it's subject to peremptory as long as it's a race-neutral reason.
BY MR. HILL: Let me just say for the record that my understanding of the issuance of a warrant by magistrate means they found probable cause to believe that person 
BY THE COURT: I already ruled. Let's move on. Twelve.
BY MR. HILL: Twelve. Lisa Woods Herman. She is an alderman for the city of Duck Hill. And we are very familiar with Miss Herman's public opinions. And she has been in the paper, been a lot of controversy, a lot of turmoil about the police department, law enforcement. And we believe that she is ultra liberal in her thinking, as far as law enforcement is concerned. And for that reason, we would challenge her.
BY MR. FRANKLIN: Here again, Your Honor, this is one of four challenges they have made against black citizens of this county. The only thing I can state for the record is that Batson prohibits them from doing exactly what they are doing here. the only way they are gong to be stopped from doing this is from a ruling from Your Honor.
BY THE COURT: Okay. But under Batson and the progeny after it, they have expanded Batson to the point it adds more criteria than it did in the past. That is a race-neutral reason right there. And so they are entitled to strike her. Fifteen, Miss Simpson.
BY MR. HILL: Miss Simpson. We have discussed Miss Simpson as a juror on this case, Your Honor. Two things  two major reasons. Number one is that she knows the defendant's mother and was friendly  on friendly terms with the defendant's mother. The next is we believe that she is kin to Maurice Simpson, who is a fugitive from justice. He is an escaped fugitive. And number three and probably more important than those two is the fact that we are informed her maiden name is Forrest. She is a Forrest herself and didn't bring that to our attention when we were inquiring about that.

*408 BY THE COURT: She never was asked that. She was asked if she was kin to him. There were other people named Forrest on this jury that were not kin to him.
BY MR. HILL: I am not aware of any Forrest that wasn't kin to him. I think our information established they were all some kind of kin. Anyway, we believe she is kin and has the same last name as the defendant  maiden name.
BY MR. FRANKLIN: Again, Your Honor, this witness was extensively questioned. She absolutely gave no reason at all to warrant her not  by her responses to the questions to warrant her not being placed on this jury. She is one of four challenges, all black. This defendant is black. Batson prohibits that. And we object and take exception to their reasons given for this peremptory challenge.
BY THE COURT: She stated she knows his mother. And that, in and of itself, would be sufficient for them to strike her as peremptory. That is a race-neutral reason. What do you say to number one?
¶ 23. Having read this portion of the transcript, I am unconvinced that the trial judge properly dealt with Forrest's Batson objection. Batson requires that the reasons for peremptory challenges be facially neutral and not a subterfuge for racial discrimination. Batson v. Kentucky, 476 U.S. 79, 96-97, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
¶ 24. When a Batson issue is raised, our trial judges are required to make an on the record determination as to (1) whether the reason is facially race neutral, and (2) whether a facially race neutral reason is being used to mask an intent to discriminate. Hatten v. State, 628 So.2d 294, 298 (Miss.1993).
¶ 25. Even a cursory reading of the record demonstrates that the trial judge failed to make a proper on the record determination. The extent of the trial court's on the record determination is contained in the following statements by the trial judge:
BY THE COURT: Well, it wouldn't for cause, but it's subject to peremptory as long as it's a race-neutral reason.
* * * *
BY THE COURT: Okay. But under Batson and the progeny after it, they have expanded Batson to the point it adds more criteria than it did in the past. That is a race-neutral reason right there. And so they are entitled to strike her.
* * * *
BY THE COURT: She stated she knew his mother. And that, in and of itself, would be sufficient for them to strike her as peremptory. That is a race-neutral reason.
¶ 26. The failure to conduct a proper Batson analysis at worst violates the equal protection rights of the defendant, Bogan v. State, 811 So.2d 286 (¶ 12) (Miss.Ct.App.2001), and at best is an invitation to mischief by the prosecution. State v. Gaitan, 536 N.W.2d 11, 20 (Minn.1995) (Page, J., dissenting). This can readily be seen as relates to Lisa Woods Herman, the Duck Hill alderwoman. The reason given by the State for excluding Miss Herman was:
BY MR. HILL: Twelve. Lisa Woods Herman. She is an alderman for the city of Duck Hill. And we are very familiar with Miss Herman's public opinions. And she has been in the paper, been a lot of controversy, a lot of turmoil about the police department, law enforcement. And we believe that she is ultra liberal in her thinking, as far as law enforcement *409 is concerned. And for that reason, we would challenge her.
¶ 27. There is nothing in the record to reflect any statements which might have been made by Miss Herman or the context within which those statements were made. There is nothing in the record to show the truth or falsity of any remarks by Miss Herman. In short there is nothing in the record on this issue, except she thinks and the prosecution appears to find that unacceptable in a juror.
¶ 28. This beyond question demonstrates that the trial court did not meet its obligation under Hatten to make an on the record determination of (1) whether the reason for the peremptory challenge is facially race neutral, and (2) whether a facially race neutral reason was merely a pretext to mask a discriminatory intent. Hatten v. State, 628 So.2d at 298. This failure by the trial court significantly impairs this Court's performance of its appellate responsibility. Tobias v. State, 584 So.2d 1276, 1279 (Miss.1991).
¶ 29. For these reasons, I dissent.
IRVING, J., JOINS THIS SEPARATE OPINION.