914 So.2d 185 (2005)
Terun MOORE, Appellant
v.
STATE of Mississippi, Appellee.
No. 2002-KA-01663-COA.
Court of Appeals of Mississippi.
January 18, 2005.
Rehearing Denied September 6, 2005.
Certiorari Denied November 10, 2005.
*187 Chokwe Lumumba, Jackson, attorney for appellant.
Office of the Attorney General, by Billy L. Gore, attorney for appellee.
EN BANC.
LEE, P.J., for the Court.

FACTS AND PROCEDURAL HISTORY
¶ 1. On April 2, 1998, Louis Avery and his brother, Michael Evans, were visiting Hico Park in Jackson. At the park a group of men were playing basketball, drinking alcohol, and smoking marijuana. Evans, who was from Detroit, Michigan, had in his possession the money with which he was going to purchase his airplane ticket for his return home. James Washington was among the men present. According to Washington, he, Moore, and others conspired to rob Avery and Evans. As the brothers prepared to leave, Avery took the driver's seat in a car. Before Evans entered the vehicle, Washington pointed a 9 millimeter automatic pistol at Avery. Evans jumped into the car and grabbed his brother's leg in an attempt to cause the car to accelerate away from the perpetrators. As the car sped away, Avery heard several shots. Moore, who was standing outside the car on the passenger side of the vehicle, fired these shots at Evans with a .25 caliber pistol. Avery drove the car to his girlfriend's house and called the paramedics for assistance. Evans was pronounced dead at the scene.
¶ 2. Moore's account of the events differs from Washington's testimony. Moore testified that although he had been at the park imbibing with the other men earlier that afternoon, he left the park and was not present during the robbery. Moore testified that he was unaware of the homicide until he saw it reported on the nightly news.
¶ 3. Moore was arrested several days after the incident, and, according to police testimony, Moore admitted to shooting Evans and expressed regret for his actions. Moore testified that he made no such admission and merely told the police that he was not present during the shooting.
¶ 4. On July 15, 2001, Moore was convicted of the capital murder of Michael Evans. Moore was sentenced to serve a term of life imprisonment in the custody of the Mississippi Department of Corrections. It is from this conviction that Moore now appeals, arguing the following six assignments of error: (1) the trial court erred in denying his motion to suppress his alleged statements admitting to the shooting; (2) the trial court erred in denying Moore's Batson challenge to the State's exclusion of several jurors; (3) the trial court erred in ruling that Moore waived his motion to suppress because Moore's attorney failed to appear for the motion hearing; (4) the trial court erred in denying Moore's motion to dismiss and for a judgment of acquittal; (5) the trial court erred in denying Moore's motion for a mistrial after the State elicited testimony that Moore was incarcerated; and (6) the cumulative effect of errors denied Moore a constitutionally fair trial and therefore his conviction should be reversed.
¶ 5. After an extensive review of the record in this case and the briefs submitted by the parties, this Court finds that these arguments lack merit, and the judgment of the trial court should be affirmed.

*188 DISCUSSION OF ISSUES

I. DID THE TRIAL COURT ERR IN DENYING MOORE'S MOTION TO SUPPRESS?
¶ 6. Moore urges this Court to reverse the trial court's decision which allowed into evidence his statement to the police in which he admitted to the shooting. Moore cites Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), in support of this proposition. Moore argues that he was arrested illegally, therefore his "confession" was a product of the illegal arrest and should have been suppressed. In his brief Moore argues that "Brown holds that if you are unlawfully arrested any statements which flows [sic] from that arrest are illegal."
¶ 7. Contrary to Moore's assertion, Brown does not stand for the above proposition, and this Court declines to construe it as such. In Brown, the defendant was arrested without probable cause and without a warrant under circumstances indicating that the arrest was investigatory. While in custody, the defendant made two inculpatory statements after he had been given the warnings proscribed by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The Supreme Court determined that the Illinois court erred in adopting a per se rule that Miranda warnings in and of themselves broke the causal chain so that any subsequent statement, even if induced by effects of unconstitutional custody, was admissible if it was voluntary and not coerced in violation of the Fifth and Fourteenth amendments. The Supreme Court decided only "that the Illinois courts were in error in assuming that the Miranda warnings by themselves, under Wong Sun, always purge the taint of an illegal arrest." Brown, 422 U.S. at 605, 95 S.Ct. 2254 (citing Wong Sun v. U.S., 371 U.S. 471, 486, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)). The Court determined that while Miranda protected a person's Fifth Amendment rights, Fourth Amendment rights are implicated in an unlawful arrest as well. Thus, excluding a statement taken without the benefit of a warning under Miranda might protect the purposes of the Fifth Amendment, but that exclusion does nothing to protect the Fourth Amendment's prohibition against unreasonable searches and seizures. To break the causal chain between the illegal arrest and the statements made subsequent to the arrest, Wong Sun requires that the statement meet the Fifth Amendment standard of voluntariness and that it be "sufficiently an act of free will to purge the primary taint." Brown, 422 U.S. at 602, 95 S.Ct. 2254, (quoting Wong Sun, 371 U.S. at 486, 83 S.Ct. 407). To determine if the statement is a "product of a free will" the Supreme Court looks to a number of factors in addition to voluntariness, including the "temporal proximity of the arrest and confession, the presence of intervening circumstances, and, particularly, the purpose and flagrancy of the official misconduct are all relevant." Brown, 422 U.S. at 603-604, 95 S.Ct. 2254 (internal citations omitted).
¶ 8. Assuming, without deciding, that Moore was arrested illegally, under Brown and Wong Sun, Moore's statement could be admitted if Moore's statement was the product of his free will to the extent that the taint of the illegal arrest had been purged. With this in mind, this Court now turns to the factors outlined in Brown. Under the first consideration of Brown, we look to the temporal proximity between the arrest and the confession. While Moore signed a waiver and an acknowledgment that he understood his rights as outlined in the Miranda warnings, the confession was given, at most, within a few hours of the arrest. We next look to the presence of any intervening *189 circumstances between the illegal arrest and the confession which would purge the taint of the illegal arrest. From the record before this Court, there appear to be no intervening circumstances between the arrest and the confession, which would lean in favor of excluding the statements. However, the next consideration under Brown, the "purpose and flagrancy" of the officials' misconduct, is problematic. To resolve questions surrounding the purpose and flagrancy of the police officer's misconduct, or even to resolve questions regarding the legitimacy of the arrest, at a minimum this Court would need to review the facts and circumstances presented to the magistrate to acquire the warrant for Moore's arrest. The record is void as to this information.
¶ 9. We look to the case of Branch v. State, 347 So.2d 957 (Miss.1977), for guidance in this situation. In Branch, the defendant, like the defendant sub judice, argued that the facts and circumstances submitted to the magistrate were insufficient to constitute probable cause. In Branch, like this case, the contested documentation was not included in the record. Like the Supreme Court in Branch, we can only assume that the documentation is not favorable to the appellant. The supreme court noted that "[t]here is a presumption that the judgment of the trial court is correct, and the burden is on the appellant to demonstrate some reversible error to this Court." The supreme court further found that the burden rests on the appellant "to see that all matters necessary to his appeal, such as exhibits, witnesses' testimony, and so forth, are included in the record, and he may not complain of his own failure in that regard. The Supreme Court may only act on the record presented to it." Id. at 958. (citing Shelton v. Kindred, 279 So.2d 642, 644 (Miss.1973)). The supreme court further commented that adequate procedures and safeguards are in place to assure that incorrect or incomplete records are remedied. This Court is unable to consider either the legitimacy of the arrest or the "purpose and flagrancy" of the police officer's alleged misconduct because the record lacks the necessary information. Because the appellant failed to place the necessary records pertaining to this assignment of error before us, we are unable to consider it.

II. DID THE TRIAL COURT ERR IN DENYING MOORE'S BATSON CHALLENGES TO THE STATE'S EXCLUSION OF SEVERAL BLACK JURORS?
¶ 10. Moore argues that the trial court committed reversible error in denying his Batson challenge to the State's exclusion of four prospective black jurors.
¶ 11. Our standard of review requires reversal only if the factual findings of the trial judge are "clearly erroneous or against the overwhelming weight of the evidence." Tanner v. State, 764 So.2d 385 (¶ 14) (Miss.2000). Any determination made by a trial judge under Batson is accorded great deference because it is "based, in a large part, on credibility." Coleman v. State, 697 So.2d 777, 785 (Miss. 1997). In the Batson context, the term "great deference" has been defined as meaning an insulation from appellate reversal of any trial findings which are not clearly erroneous. Lockett v. State, 517 So.2d 1346, 1349-50 (Miss.1987).
¶ 12. Batson provides procedural directives for the trial court to follow in detecting and disallowing the practice of using peremptory challenges to remove members of an identified racial group from jury service based upon nothing more than their racial identification. Forrest v. State, *190 876 So.2d 400, 403 (¶ 4) (Miss.Ct.App. 2003).
First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.
Berry v. State, 728 So.2d 568 (¶ 11) (Miss. 1999) (citing Hernandez v. New York, 500 U.S. 352, 358-59, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)). "When the prosecution gives race-neutral reasons for its peremptory strikes, the sufficiency of the defendant's prima facie case becomes moot." Manning v. State, 735 So.2d 323 (¶ 28) (Miss.1999). Furthermore, if a defendant offers no rebuttal, the trial court may base its decision solely on the reasons given by the prosecution. Id. at (¶ 29).
In order to "establish a prima facie case of purposeful discrimination in selection of the petit jury" a criminal defendant must show:
1. That he is a member of a "cognizable racial group";
2. That the prosecutor has exercised peremptory challenges toward the elimination of veniremen of his race; and
3. That facts and circumstances raised an inference that the prosecutor used his peremptory challenges for the purpose of striking minorities.
Conerly v. State, 544 So.2d 1370, 1372 (Miss.1989) (citing Batson v. Kentucky, 476 U.S. 79, 96-97, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)); Lockett, 517 So.2d at 1349.
¶ 13. Moore argues that the trial judge did not follow the requirements of Batson, stating "[t]he court did not permit Moore to make a prima facie case showing that race was the criteria for the exercise of each peremptory challenge."
¶ 14. First, there is no indication in the record or the briefs of the racial makeup of the jury. With that thought in mind, the following dialogue ensued during jury selection:
MR. COXWELL: Your Honor, S-1 would be juror No. 3 on panel No. 5, Sykes.
MR. LUMUMBA: I will do a Batson challenge on that, Your Honor, but I will explain later.
THE COURT: Mr. Lumumba, I would have to complete the objection so that I can determine whether or not there is a pattern which indicates 
MR. LUMUMBA: Do you want me to wait until he finishes and tell you?
THE COURT: Yes, sir. When he finishes his objections, then we will.
¶ 15. The State then struck Saundra Hicks, Richard Terrell, Helen Lowery, and Lonnie Wesley Davis.
MR. LUMUMBA: Well, just for the record, we do challenge for Batson challenges. Everybody excluded is white  black, I'm sorry, except for one person. So we do challenge for Batson.
THE COURT: All right.
MR. LUMUMBA: I don't know if the Court wants to entertain that now or later on.
THE COURT: I will certainly allow you to make your complete objection after we get through.
MR. LUMUMBA: Okay. So you tendered to me down through Andre Brown?
¶ 16. The defense then struck certain jurors, and the State struck Betty Jean Collins, Mary Jane Barber, a juror named *191 Bumphis, and Willie Jean Williams. The State then struck Julia Taylor as an alternate juror.
THE COURT: Then Zella Nicholas will be the alternate.
MR. LUMUMBA: Okay. I lost count here. Who is juror 11?
THE COURT: Juror eleven is Alene Bold, the number 8 juror on panel 7.
MR. LUMUMBA: I re-raise my Batson challenge to the state's challenges.
THE COURT: The Court would find that the state has not exclusively exercised its challenges on African-American jurors, that there are, I believe, at least one white 
MR. COXWELL: There were two white jurors stricken by the state.
THE COURT: Two white jurors which were challenged by the state, plus the state has two remaining peremptory challenges which it did not exercise, which would indicate that the state has not attempted to exclude jurors on a racial basis. So the Batson challenge would be overruled by the Court.
¶ 17. Moore did not establish a prima facie case that the State excluded jurors on the basis of race, thus there was no need for the State to present race-neutral reasons for its peremptory strikes. This assignment of error lacks merit.

III. DID THE TRIAL COURT ERR IN RULING THAT MOORE WAIVED HIS MOTION TO SUPPRESS BY FAILING TO APPEAR FOR THE HEARING THEREON?
¶ 18. Moore does not cite any authority to support his contention that the trial court abused its discretion in concluding that Moore waived the motion to suppress by his attorney's failure to appear. Although such a dismissal may appear harsh, Moore has not provided any relevant authority to show the trial court's error. "Failure to cite relevant authority obviates the appellate court's obligation to review such issues." Simmons v. State, 805 So.2d 452, 487 (Miss.2001) (citing Williams v. State, 708 So.2d 1358, 1362-63 (Miss.1998)). Accordingly, this assignment of error lacks merit.

IV. DID THE TRIAL COURT ERR IN DENYING MOORE'S MOTION TO DISMISS AND FOR A JUDGMENT OF ACQUITTAL?
¶ 19. "The standard of review for a denial of a directed verdict and peremptory instruction are identical." Hawthorne v. State, 835 So.2d 14, 21 (¶ 31) (Miss.2003). A motion for a directed verdict and request for a peremptory instruction challenge the legal sufficiency of the evidence. McClain v. State, 625 So.2d 774, 778 (Miss.1993). On the issue of legal sufficiency, reversal can only occur when evidence of one or more of the elements of the charged offense is such that "reasonable and fair-minded jurors could only find the accused not guilty." Hawthorne, 835 So.2d at 21 (¶ 31). In reviewing such a motion, the credible evidence which is consistent with guilt must be construed as true, and the State is to be given the benefit of all favorable inferences which may reasonably be drawn from the evidence. Wetz v. State, 503 So.2d 803, 808 (Miss.1987). The jury resolves matters regarding the weight and credibility of the evidence. Neal v. State, 451 So.2d 743, 758 (Miss.1984).
¶ 20. Moore's brief proposes that the motion to dismiss should have been granted for two reasons. For the purpose of clarity we address each separately.

*192 (a) Capital murder charge
¶ 21. Moore argues that the State failed to prove an underlying felony in its attempt to convict Moore of capital murder. Mississippi Code Annotated Section 97-3-79 (Rev.2000) provides as follows:
Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery....
¶ 22. This statute has been construed by our supreme court so that proof of asportation is not necessarily an element of robbery since robbery may, on the proper facts, be proven by the mere attempt to take the property of another from his person or presence. Cooper v. State, 386 So.2d 1115, 1116 (Miss.1980). Thus, we review this claim in light of the holding that robbery can be proven by the attempt to take the property of another.
¶ 23. Giving the State the benefit of all inferences reasonably drawn from the evidence, there is ample evidence to support the verdict. James Washington testified that he and Moore attempted to rob Avery and Evans, and the jury considered this testimony with full knowledge of Washington's plea bargain. Detectives McCann, Wade and Youngblood each testified that Moore confessed to shooting Evans. Moore's letters to Washington, which were not included in the record on appeal, apparently expressed Moore's concern in Washington's testimony against him. The evidence is not such that reasonable and fair-minded jurors could only find Moore not guilty.

(b) The State's witnesses
¶ 24. Moore next argues that the State's case is based upon the "inherent unreliability of two types of witnesses: (a) police officers who had difficulty getting their stories straight and had conflicting testimony and (b) the accomplice, whose testimony the jury is instructed are not inherently credible." As stated earlier, the jury determines the weight and the credibility of the evidence. Neal, 451 So.2d at 758. "[T]he jury's decision based on conflicting evidence will not be set aside where there is substantial and believable evidence supporting the verdict." Billiot v. State, 454 So.2d 445, 463 (Miss.1984) (citing Harrigill v. State, 381 So.2d 619, 623 (Miss.1980)).
¶ 25. Because the evidence is not such that reasonable jurors could only find Moore not guilty, we find that the trial court did not err in denying Moore's motion to dismiss and for a judgment of acquittal. This assignment of error is without merit.

V. DID THE TRIAL COURT ERR IN DENYING MOORE'S MOTION FOR A MISTRIAL AFTER THE STATE ELICITED TESTIMONY THAT MOORE WAS INCARCERATED?
¶ 26. Moore's fifth error is that the trial court erred in denying his motion for a mistrial after the prosecutor elicited testimony from Moore's investigator that Moore wore a red jumpsuit at the time the investigator interviewed him. The testimony in question is as follows:
Q.: You had been there talking with Terun; right?
A.: Yes. I talked with Terun.
Q.: And Terun had on a red jumpsuit?
A.: At the time I talked to him, it could have been red. I am not sure.
¶ 27. Moore promptly objected and requested a mistrial.
*193 ¶ 28. Granting a motion for a mistrial is within the sound discretion of the trial judge. Brooks v. State, 788 So.2d 794, 796 (¶ 8) (Miss.Ct.App.2001). The trial judge is in the best position to determine the prejudicial effect of a questionable remark. Id. We cannot say that the trial judge abused his discretion in denying the mistrial for the defendant did not suffer serious and irreparable damage from the statement. Accordingly, this assignment of error is without merit.

VI. DOES THE CUMULATIVE EFFECT OF ERRORS WARRANT REVERSAL?
¶ 29. None of the errors argued on appeal merit reversal as discussed in sections I through V of this opinion. Finding Moore's arguments to be without merit, we find no cumulative error that would necessitate a reversal. Therefore, we affirm.
¶ 30. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
BRIDGES, P.J., MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. KING, C.J., CONCURS IN RESULT ONLY. IRVING, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.