CARLTON, J.,
for the Court:
¶ 1. A Hinds County grand jury indicted Darrell Tillis for the murder of Michael Olowo-Ake. After hearing all the testimony presented at Tillis’s trial, a jury found Tillis guilty of manslaughter pursuant to Mississippi Code Annotated section 97-3-35 (Rev. 2006). On appeal, Tillis raises the following issues: (1) whether the circuit court erred by allowing the coroner to testify and the State to admit the coroner’s report; (2) whether the circuit court erred by overruling Tillis’s objection to an improper comment made by the State during closing argument; (3) whether Tillis was denied due process and a fair trial; (4) whether the circuit court erred by denying Tillis’s request for Olowo-Ake’s National Crime Information Center (NCIC) report; [1] (5) whether Tillis should have been acquitted as a matter of law pursuant to the Weathersby rule;[2] (6) whether there was sufficient evidence to support Tillis’s conviction; (7) whether the verdict was against the overwhelming weight of the evidence; (8) whether the circuit court erred by refusing to allow Tillis to physically demonstrate how the shooting occurred; (9) whether the State committed prosecutorial misconduct by eliciting improper witness testimony; and (10) whether cumulative error requires the reversal of Tillis’s conviction and sentence. Finding no error, we affirm.
FACTS
¶2. On Sunday, April 11, 2010, Tillis and Olowo-Ake met at a Texaco in Jackson, Mississippi, so Tillis could purchase two pounds of marijuana from Olowo-Ake. According to the testimony given by Nathaniel Singleton, Olowo-Ake picked Singleton up the morning of the shooting, and the two men headed to the Texaco. Singleton testified that Olowo-Ake parked his truck by a gas pump, and then Tillis[3] *43 drove up and parked on the other side of the pump. Tillis took Singleton’s seat in the front of Olowo-Ake’s truck and began looking through a bag filled with marijuana that Olowo-Ake had in his truck. Tillis asked whether the marijuana in the bag was all that Olowo-Ake had with him, and Olowo-Ake answered affirmatively. Because Singleton did not want to be involved in the drug transaction, Olowo-Ake gave him some money to purchase a cigar inside the store.
¶3. When Singleton exited the store, he testified that Tillis had Olowo-Ake “on the back tire of the truck between the pump and the truck” and was hitting Olo-wo-Ake. Singleton testified that he ran up to hit Tillis when Tillis “pulled the pistol out on me and told me — he cursed at me and told me to get back.”. At that point, according to Singleton’s testimony, Olowo-Ake stood up from his position on the ground, and Tillis grabbed Olowo-Ake by his shirt and threw him inside the truck. Singleton claimed that Tillis then pointed the gun at Olowo-Ake and said, “You better give it to me. You better give it to me.” Singleton further testified that Tillis then shot Olowo-Ake once. Singleton stated that, at the time the gun fired, Tillis was on top of Olowo-Ake in the truck. Singleton testified that he could see clearly inside the truck because he was standing right beside the vehicle.
¶ 4. Once he heard the gunshot, Singleton ran into the Texaco and asked for help. He testified that, when he exited the Texaco, Tillis again pointed the gun at him, then at Olowo-Ake, and said, “You better give it to me.” Singleton testified that Tillis then fired another shot, which did not hit Olowo-Ake. Singleton further testified that Tillis grabbed the bag containing the marijuana and some money from Olowo-Ake’s left pocket, and then Tillis drove away from the Texaco. ■ Singleton testified that Olowo-Ake was not known to carry a gun and that he did not see Olowo-Ake with any kind of weapon during the fight.
¶ 5. Scottie Morton, who lived in a nearby apartment complex, pulled into the Texaco just after the shooting. Testimony in the record reflects that Morton knew Singleton and Olowo-Ake, and when Singleton told Morton about the shooting, Morton called Olowo-Ake’s brother, Anthony. Like Singleton, Morton testified that Olowo-Ake was not known to carry a gun, and Morton testified that he did not see a gun or a knife in Olowo-Ake’s truck when he arrived at the Texaco. When Olowo-Ake’s brother, Anthony, arrived at the Texaco, he drove Olowo-Ake’s truck to a nearby Citgo gas station, where he had seen an ambulance in the parking lot. After police arrived at the Citgo, paramedics rendered first aid to Olowo-Ake. They then transported Olowo-Ake to the hospital, where he was pronounced dead.
¶ 6. The jury also heard testimony from Gregory Lott and Jack Evern, who pulled into the Texaco just before the shooting. Lott parked his truck by the front door of the Texaco and entered the store while Evern remained in the truck. Lott testified that he saw two men, later identified as Tillis and Olowo-Ake, fighting by the gas pump as he exited the Texaco and walked back to his truck. According to Lott’s testimony, Tillis appeared to be waving a gun, and Olowo-Ake appeared to be defending himself from Tillis. Lott got back into his truck, and he testified that, as he and Evern drove away, he heard two gunshots..
*44 ¶ 7. Another witness, Evern, also testified to seeing the altercation at the Texaco. Evern testified that he saw three men in the area of the gas pumps as he and Lott pulled into the Texaco. Evern saw Olowo-Ake pumping gas and Tillis in the passenger seat of Olowo-Ake’s truck “fumbling with something.” Evern testified that Olowo-Ake and Tillis exchanged a few words, and then Olowo-Ake walked over to Tillis and took sevéral swings at Tillis. According to Evern’s testimony, Olowo-Ake and Tillis began to fight, and Evern saw Tillis with' a pistol. Evern testified that Tillis shot Olowo-Ake once, then shot Olowo-Ake again, and then Evern and Lott left the Texaco. Evern further testified that he never saw a weapon of any kind in Olowo-Ake’s possession.
¶ 8. The jury also heard testimony from the Defendant, Tillis, who stated that he brought no gun with him to the Texaco the day of the shooting. Tillis testified that, after inspecting' the marijuana in Olowo-Ake’s truck, he decided not to purchase any. He exited the truck and approached Olowo-Ake, who was still pumping gas. Tillis testified that Olowo-Ake became very upset when.he learned that Tillis did not want to purchase any of the marijuana. According to Tillis’s testimony, a heated exchange followed, and then Olowo-Ake reached for a gun. Tillis testified that he was able to snatch the gun from Olowo-Ake’s grasp and that he held the gun in one hand as he tried to hold Olowo-Ake back with his other hand.
¶ 9.. Tillis testified that he told Olowo-Ake, “Man, get back,, man, before you make me shoot you/’ Tillis testified that Olowo-Ake tried to regain possession of the gun, but Tillis pushed him a\yay and told him to “stop” and to “get back.” According to Tillis’s testimony, he was scared and terrified by the situation. He further testified that Olowo-Ake fell to the ground at one point during the altercation, but Tillis maintained that he never hit Olowo-Ake. Tillis claimed that he only wanted to keep Olowo-Ake - from regaining possession of the gun. He also claimed that he had no memory of consciously pointing the gun at Singleton.
¶ 10. Tillis further testified that Olowo-Ake got up from the ground and dove back into his truck. Thinking that Olowo-Ake might be reaching for another weapon, Tillis testified that he tried to grab Olowo-Ake, and the gun “just went off.” Tillis stated that he leaned over to check- on Olowo-Ake when the gun accidentally fired again into the truck’s seat. Tillis maintained at trial that the gun was not pointed at Olowo-Ake and that he was not trying to shoot Olowo-Ake Tor a second time. Following the shooting, Tillis got into his vehicle and left the Texaco. At trial, he stated that he left the Texaco because he feared retaliation from Singleton. He further testified that, when he learned Olowo-Ake’s family was looking for him; he headed to New Orleans, Louisiana. Although police later found no weapon or marijuana in Olowo-Ake’s truck, Til-lis testified that he left both the gun and the marijuana on the truck’s floorboard;
¶ 11. In, their investigation, police found no physical evidence at the Texaco. When they searched Olowo-Ake’s truck at the Citgo, they failed to find a weapon or any marijuana. However," the police discovered two 9mm-caliber spent cartridge casings in the driver’s seat of Olowo-Ake’s truck, and Olowo-Ake’s autopsy led to the recovery of a projectile from 'his body.
¶ 12. Detective Kimberly Brown, who responded to the shooting, testified that she spoke with the clerk at the Texaco. Although the Texaco’s surveillance recorder was not working the day of the shooting, Defective Brown was able to view surveillance-video from an adjacent busi *45 ness. The business’s recording could not be converted and was only viewable on the store’s own equipment. Detective Brown testified that the images from the video were'fuzzy, but she observed a scuffle between two people at Olowo-Ake’s truck. However, due to the video’s poor quality, Detective Brown was unable to clearly identify anyone in the video or to see a gun.
¶ 13. Detective Brown attempted to obtain a copy of the surveillance video, but each attempt proved unsuccessful. On her third attempt .to convert the video to a readable format, she learned .that the business’s recording system had “rolled over” and recorded over the footage from the day of Olowo-Ake’s shooting. Detective Brown further testified that during her investigation she showed Singleton a photo lineup containing Tillis’s photograph and that Singleton positively identified Tillis as Olowo-Ake’s shooter. Law enforcement officials lat.er apprehended Tillis. in New Orleans. . ■
¶ 14. After considering the testimony and evidence presented at trial, the jury found Tillis guilty of. manslaughter. The circuit court judge sentenced Tillis to a term of twenty years in the custody of the Mississippi Department of Corrections. Tillis filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial. However, the circuit court judge denied Tillis’s motion. Aggrieved by his conviction and the circuit court judge’s ruling, Tillis now appeals to this Court.
DISCUSSION
I. Whether the circuit court erred by allowing the coroner to testify and the State to admit the coroner’s report.
¶ 15. “The standard of review regarding admission or exclusion of evidence is abuse of discretion. Where error involves the admission or exclusion of evidence, this Court will not reverse unless the error adversely affects a substantial right of a party.” Whitten v. Cox, 799 So.2d 1, 13 (¶ 27) (Miss.2000) (citation and internal quotation marks omitted). “Unless the trial court has so abused this discretion as to prejudice the defendant’s case, we will not reverse the ruling of. the trial 'court.” Tidwell v. State, 806 So.2d 1146, 1148 (¶ 7) (Miss.Ct.App.2002) (citation omitted). We employ “a de novo standard of review when presented with constitutional issues.” Smith v. State, 25 So.3d 264, 269 (¶ 11) (Miss.2009) (citation omitted):
¶ 16. In his first assignment of error, Tillis argues that the circuit court judge erred by allowing Sharon Grisham-Stew-art, the Hinds County Coroner, to testify about the medical examiner’s findings. Tillis further argues that the circuit court judge erred by allowing the State to admit the coroner’s report into evidence during the coroner’s testimony. In his brief, Til-lis asserts that the circuit court judge erred for the 'following reasons: (1) the coroner’s testimony violated Tillis’s right (o confront the witnesses against him; (2) the coroner , lacked the expertise to testify as to the manner of Olowo-Ake’s death; (3) the State’s argument regarding “homicide” and “accident” misled the jury; and (4) the State committed a discovery violation by failing to provide the coroner’s report prior to trial.
a; The coroner’s testimony violated Tillis’s right to confront the witnesses against him.
¶ 17. In attacking the admission of the coroner’s testimony and report, Til-lis relies upon the United States Constitution and the Mississippi Constitution, which both guarantee a criminal defendant *46 the right to confront and cross-examine the witnesses against him. U.S. Const. amend. VI; Miss. Const. art. 3, § 26. Tillis argues that the circuit court erred by allowing the coroner to testify in place of the medical examiner. Tillis asserts that the admission into evidence of the coroner’s testimony prevented him from confronting the medical examiner, who.actually performed Olowo-Ake’s autopsy and determined Olowo-Ake’s manner of death.
¶ 18. The record reflects that, during its direct examination of the coroner, the State elicited information pertaining to the preparation of the coroner’s report. The record also reflects that the State elicited sufficient testimony to lay an evidentiary foundation to admit the coroner’s report as a public record and a record of vital statistics. See M.R.E. 803(8)-(9). With no objection from the defense, the State then admitted into evidence the coroner’s report on Olowo-Ake’s death investigation.[4]
¶ 19. The coroner testified that she completes her report as part of her duties and in the normal course of her business.[5] The coroner’s official report contained a section entitled “Manner of Death” and a subsection entitled “Probable Cause of Death,” as needed to fulfill the statutory requirement to report this information.[6] The form also contained the follqwing six choices for manner of death: natural, homicide, accident, suicide, unknown, or pending. The coroner testified that she usually selects “homicide” whenever a person’s death results from the actions of another individual. The coroner explained that she checked “homicide” on her report for Olowo-Ake’s manner of death and that she indicated the probable cause of death was a- gunshot wound to Olowo-Ake’s back.
¶ 20. During cross-examination, Tillis’s attorney asked the coroner additional questions regarding her report. Tillis’s attorney asked what kind of cases generally involve ■ marking “accident” for manner of death, and in response, the coroner admitted that such a death could involve an accidental shooting. The defense then asked the coroner about Olowo-Ake’s autopsy report, which was prepared by the Mississippi Medical Examiner rather than the coroner. Despite the State’s objection to relevance, the circuit court judge allowed the defense to continue with its line of questioning. When Tillis later made a record of his objections to the coroner’s testimony, including references to the medical examiner and the medical examiner’s autopsy report, the circuit court judge acknowledged on the record that the defense — rather than the State — asked the coroner about the autopsy report and opened the door to that issue.[7]
*47 ¶21. As the record reflects, Tillis confronted and cross-examined the coroner about her report. The record .further reflects that, when the State offered the coroner’s report into evidence, Tillis failed to object to the admission of the report.[8] Additionally, as noted by the circuit court judge, Tillis, not the State, elicited from the coroner the testimony at issue about the autopsy report.[9] The record also reflects that the State elicited sufficient testimony for the admission of the coroner’s report into evidence as a public record and as a record of vital statistics. See M.R.E. 803(8)-(9).[10] Therefore, for these reasons, we find that Tillis’s argument regarding this claim of error is procedurally barred and lacks merit.
b. The coroner lacked the expertise to testify as to the manner of Olowo-Ake’s death.
¶22. Tillis next argues that the coroner, without qualifying as an expert under Rule 702 of the Mississippi Rules of Evidence, provided expert testimony regarding the manner of Olowo-Ake’s death. He further argues that the coroner’s testimony on this subject fell outside her area of expertise. As previously acknowledged, our easelaw recognizes that a circuit court’s admission of evidence, including testimony, is reviewed for abuse of discretion. See Clark v. Miss. Transp. Comm’n, 767 So.2d 173, 175 (¶ 8) (Miss.2000).
¶ 23. The coroner testified at trial that, as part of her duties and in the normal course of her business, she completed her official report after examining Olowo-Ake’s body.[11] As reflected in the record, the coroner’s official report contained a section entitled “Manner of Death,” which provided six different options, including “homicide” and “accident.”[12] The coroner testified that, consistent with her duties as coroner, she completed the report, including the section entitled “Manner of Death.” Regarding the manner of Olowo-Ake’s death, the coroner testified ■ that Qlowo-Ake suffered a gunshot wound to his back, and she testified that, she usually selects “homicide” if a person’s death resulted from the actions of another. However, she also admitted on cross-examination that an accidental shooting could constitute an “accident” for the purposes of her report.
¶ 24. The coroner’s testimony explained why she concluded in her official report that Olowo-Ake’s death constituted a “homicide.” The coroner explained that, for the purpose of completing her report, she usually concluded “homicide” for any death resulting from the actions of another. As reflected in the coroner’s report and explained by her testimony, the decision to select “homicide” failed to constitute a matter requiring an expert opinion. Instead, the coroner’s decision simply reflected that Olowo-Ake died due to another person’s actions.
¶ 25. As explained during her testimony, the coroner’s determination was not based upon scientific, technical, or other specialized knowledge but rather upon her statutorily required duty to report and her *48 personal observations about the circumstances of Olowo-Ake’s death. See Miss.Code Ann. § 41-61-63(2) (Rev. 2013); M.R.E. 701. On cross-examination, the defense not only asked the coroner questions about her own report, but it also raised the issue of the medical examiner’s autopsy report.[13] As previously noted, the State'objected to this' line of questioning by the defense, but the circuit court judge overruled the State’s objection.
¶ 26. On appeal, Tillis is procedurally barred from asserting any error regarding testimony about the medical examiner’s autopsy report that he elicited from the coroner. See Murray v. State, 849 So.2d 1281, 1288 (¶ 29) (Miss.2003); Lewis v. State, 445 So.2d 1387, 1389 (Miss.1984). Based on the evidence in the record, we find no abuse of discretion by the circuit court’s decision to admit into evidence the coroner’s testimony. See Clark, 767 So.2d at 175 (¶ 8). This issue therefore lacks merit.
c. The State’s argument regarding “homicide” and “accident” misled the jury.
¶ 27. Tillis next asserts that the State’s argument regarding the coroner’s classification of Olowo-Ake’s manner of death as a “homicide” rather than an “accident” misled the jury. During its closing argument, the State said:
Second of all[,] the coroner took the stand, and she said that this case was'a homicide. And there is a coroner’s report where there are several options at the bottom. And one of those options is accident, and that wasn’t checked.
[[Image here]]
So the coroner took the stand, and she explained why this was a homicide based -on the information gathered from the police, based on the examination of the body. She explained why this was a homicide.
But at no time was there testimony elicited from that witness that could have explained how this was an accident so that she could have checked this accident box on here.
¶ 28. After Tillis completed his closing argument, the State continued, further stating:
Another reason we know it’s not self-defense, and we know it’s not an accident, and we know it’s not suicide[,] because all of those have been presented to you by defense counsel[,] is because a coroner took the stand. And the coroner had several options.... And her options are natural causes, homicide, accident, suicide, unknown, or pending.
If there was any doubt in her mind, she could have checked unknown. She could have checked pending, but she didn’t. A hundred percent with definitive proof she checked homicide because it’s not self-defense, and it’s not an accident.
¶ 29. As our caselaw recognizes, “an attorney is granted broad latitude in making closing arguments.” Baskin v. State, 991 So.2d 179, 183 (¶ 18) (Miss.Ct.App.2008) (citation omitted). Furthermore, the “failure to object to an allegedly improper statement made during closing arguments will bar appellate review of the issue unless it constitutes plain error.” Id. (citation omitted). In Baskin, this Court addressed an argument that the State violated the defendant’s substantive rights by making impermissible comments during closing argument. Id. at 181 (¶ 9). We stated:
Rule 103(d) of the Mississippi Rules of Evidence allows a court to take notice of any plain error affecting a substantial *49 right even though it was not brought to the court’s attention. In addressing the issue of plain error, the [Mississippi] [Sjupreme [C]ourt has said the following:
If no contemporaneous objection is made at trial, a party must rely on the plain[-]error rule to raise the assignment of error on appeal. The plain[-]error doctrine requires that there be an error and that the error must have resulted in a manifest miscarriage of justice. The plain[-]error rule will only be applied when a defendant’s substantive or fundamental rights are affected.
Id. (internal citations and quotation marks omitted).
¶ 30. As -reflected in the record, Tillis failed to contemporaneously object to the State’s closing-argument statements regarding the coroner’s classification of Olowo-Ake’s manner of 'death as a “homicide” rather than an “accident.” The record also shows that the State’s closing-argument comments addressed and drew inferences from evidence previously admitted during trial. As our caselaw acknowledges, “‘[t]he prosecutor may comment upon any facts introduced into. evidence, and he may draw whatever deductions and inferences that seem proper to him from the facts.’” Flowers v. State, 842 So.2d 531, 554 (¶ 64) (Miss.2003) (quoting Bell v. State, 725 So.2d 836, 851 (¶ 40) (Miss.1998)).
¶31. Thus, in addition to finding this claim of error procedurally barred because Tillis failed to object at trial, we also find that the State’s closing-argument comments fell within the wide latitude afforded to attorneys when arguing their cases before a jury. See id. As a result, the record fails to show that, the State’s closing-argument comments resulted in a manifest miscarriage of justice as required for reversal by the plain-error rule. See Baskin, 991 So.2d at 181 (¶ 9). We therefore find thát this' argument is procedurally barred and lacks merit. See id. at 183 (¶ 18).
d. The State committed a discovery violation by failing to provide the coroner’s report prior to trial.
[10] ¶ 32. Tillis, also contends that, because the.,State failed to provide the coroner’s name or report before trial, the admission of the coroner’s testimony and report constituted a discovery violation. Upon review; of this issue, we recognize that “[t]he purpose of [our] strict discovery rules is ... to avoid trial by ambush and to ensure that all parties involved have a reasonable time for trial preparation.” Poole ex rel. Poole v. Avara, 908 So.2d 716, 725 (¶ 19) (Miss.2005). As previously noted, we review the admission or exclusion of evidence for abuse of discretion. Whitten, 799 So.2d at 13 (¶ 27).
¶ 33. In accordance with Rule 9.04 of the Uniform Rules of Circuit and County Court, Tillis raised a timely .initial objection that he lacked notice of the coroner’s testimony. Tillis argued that the discovery provided by the State failed to include any reports by the coroner or to even mention the coroner’s name. In response, the State explained that it subpoenaed the medical examiner'to testify about Olowo-Ake’s autopsy report, but the medical examiner was in Texas at the time of trial. Therefore, the State called the coroner and asked her to testify about the report she completed.[14] The State explained that, although the coroner usually filed a report pursuant to death investigations, like the defense, the State failed to obtain the coro *50 ner’s report on Olowo-Ake’s death prior to trial.
¶ 34. After hearing from both parties, the circuit court judge stated:
The [c]ourt is going to find that ... there is a coroner, and ... the coroner pronounces the death of an individual and has to file that with the [circuit] clerk[,] which is available both to the State and the [Defendant equally, and this is no surprise to the [Defendant, that that is the process by which a person is declared dead[;] the [c]ourt is going to allow the coroner to give testimony, and [the Defendant] will have an opportunity today to cross-examine her.
¶ 35. The circuit court judge reiterated her ruling later in the trial. Following the coroner’s testimony, Tillis’s attorney made a record of the defense’s objections to the coroner’s testimony and to the admission of her report. The circuit court judge then stated that, whether kept with the circuit clerk or in the coroner’s office, the coroner’s report “was as easily accessible to the [Defendant as it was to the State, especially upon knowing that the coroner would be present or had been present at some point [in the investigation]” since, as the coroner, “the law require[d] [her to] answer the questions ... and conduct the proper investigations.”
¶ 36. As the record reflects, although Tillis raised a timely initial objection to the coroner’s testimony, he failed to then seek a continuance or a mistrial pursuant to Rule 9.04. As acknowledged by the supreme court, “[i]t is the responsibility of defense counsel to request a continuance if unfairly surprised and, if requested, the trial court should almost certainly grant it. By failing to do so, [the defendant] waives the issue for appeal.” Wooten v. State, 811 So.2d 355, 366 (¶ 30) (Miss.Ct.App.2001) (citation omitted). See also URCCC 9.04. Accordingly, we find no abuse of discretion in the circuit court’s decision to allow the coroner’s testimony and to admit her report into evidence.[15] This argument lacks merit.
II. Whether the circuit court erred by overruling Tillis’s objection to an improper comment made by the State during closing argument.
¶37. In his next assignment of error, Tillis asserts that the circuit court erred by overruling his objection to the State’s improper comment on the defense’s failure to call the coroner as a witness. As acknowledged by both parties on appeal, the general rule in Mississippi states that “the failure of either party to examine a witness equally accessible to both is not a proper subject of comment before the jury by either of the parties.” Brown v. State, 200 Miss. 881, 887, 27 So.2d 838, 840 (1946) (citing Heafner v. State, 196 Miss. 430[, 430], 17 So.2d 806, 808 (1944)).
¶ 38. Even if this Court determines that a prosecutor made an improper comment, the comment may not necessarily constitute reversible error. See Dunaway v. State, 551 So.2d 162, 163 (Miss.1989); Bright v. State, 894 So.2d 590, 596 (¶ 30) (Miss.Ct.App.2004). In Dunaway, our supreme court stated:
As set forth in Craft v. State, 226 Miss. 426, 84 So.2d 531 (1956), the test to determine if an improper argument by a prosecutor requires reversal is whether the natural and probable effect of the prosecuting attorney’s improper argument created unjust prejudice against the accused resulting in a decision influenced by prejudice.
Dunaway, 551 So.2d at 163. In addition, “where there is substantial evidence sup *51 porting the defendant’s guilt, a prosecutor’s comment about a potential witness’s absence is not reversible error in and of itself.” Foley v. State, 914 So.2d 677, 689 (¶ 24) (Miss.2005) (citation omitted).
¶ 39. During its closing argument, the State commented on Tillis’s failure to call the coroner as a witness. Tillis objected, arguing that the defense bore no obligation to call any witnesses and that the State was trying to shift the blame. The circuit court judge stated, “I told the jury that what you [attorneys] say is not law, and they determine the facts.” Tillis then made a motion for a mistrial, which the circuit court judge denied. On appeal, Tillis claims that the circuit court judge committed reversible error by overruling his objection to the State’s allegedly improper comment regarding Tillis’s failure to call the coroner as a witness.
¶ 40. Based on a review of the record, we find that the State’s comment, even if improper, failed to “create[ ] unjust prejudice against [Tillis] resulting in a decision influenced by prejudice.” Dunaway, 551 So.2d at 163. The record reflects that the coroner testified during the State’s case-in-chief and that Tillis then rigorously cross-examined her about her testimony. Thus, the State’s comment failed to leave the jury to wonder what the coroner might have said and which version of events her testimony might have supported.[16] Instead, the record reflects that, at the time of the State’s closing argument, both parties had extensively questioned the coroner and presented their version of events leading to Olowo-Ake’s shooting. As a result, the record reflects no reversible error resulting from the State’s closing-argument comments.
¶ 41. In evaluating the applicability of the plain-error rule to the comments at issue, we find that, when viewed as a whole, the record contains substantial evidence to support Tillis’s guilt for Olowo-Ake’s manslaughter. See Foley, 914 So.2d at 689 (¶ 24). The State presented several witnesses who contradicted Tillis’s claims that he accidentally shot Olowo-Ake as he attempted to defend himself. As the record reflects, these witnesses testified that Tillis hit Olowo-Ake and fired two shots at him and that Olowo-Ake appeared to be the one defending himself from Tillis’s aggressive behavior.
¶ 42. Because the comment at issue fails to warrant reversal of Tillis’s manslaughter conviction, we find no abuse of discretion by the circuit court’s decision to overrule Tillis’s objection to the comment. In the context of this case, the State’s closing-argument comment failed to unfairly prejudice Tillis, and the record contains substantial evidence to support Tillis’s guilt.[17] This argument therefore lacks merit.
III. Whether Tillis was denied due process and a fair trial.
¶43. Tillis next argues that he was denied due process and a fair trial as a *52 result of the following: (1) the State’s failure to preserve a surveillance video of the shooting; (2) the circuit court’s refusal to give a jury instruction on spoliation; and (3) the circuit court’s denial of his right to a complete trial transcript.
a. The State failed to preserve 1 a surveillance video of the shooting.
¶44. During Tillis’s trial, Detective Brown testified that the Texaco’s surveillance recorder was not working the day of the shooting but that she was able to view surveillance video from an adjacent business. The record reflects that the business retained possession of its video equipment. However, Detective Brown testified that she tried, to copy the surveillance video to a jump drive, which she then took back to her office. When Detective Brown returned to her office, though, she discovered that the jump-drive file was in an unreadable format that she could not view on her computer. Detective Brown made several attempts to obtain a copy of the video in another format, but each attempt proved unsuccessful. On the third attempt, she learned that the business’s surveillance video had “rolled over” and recorded over the old footage. Therefore, while Detective Brown was initially able to watch the surveillance footage of the shooting on the business’s in-store equipment, she was unable to obtain an actual copy of the video.
¶45. On appeal, Tillis argues that he was denied access to a video that may have supported his version of the shooting. He asks this Court to reverse and render his conviction. In the alternative, he asks this Court to find that the circuit court should have given his requested jury instruction on spoliation. In response, the State first argues that no discovery violation occurred because the State never actually possessed the surveillance video. The State further asserts that, even if this Court “find[s] that Detective Brown’s possession of an unreadable file on a jump drive [i]s somehow tantamount to having but failing to preserve the actual surveillance video, an application of the [relevant caselaw] still shows that no due[-]process violation occurred.”
¶46. Where a defendant claims that his due-process rights have been violated because the State lost or destroyed evidence, this Court employs the following three-part test:
(1) the,evidence in question must possess an exculpatory value that was apparent before the evidence was destroyed; (2) the evidence must be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably. available means; and (3) the prosecution’s destruction of the evidence must have been in bad faith.
Freeman v. State, 121 So.3d 888, 895 (¶ 16) (Miss.2013).
¶47. With regard to the first prong of the test, Detective Brown testified that the surveillance footage was unclear and that she was only able to make sense of what she saw based on Singleton’s statement. Detective Brown also testified that she was unable to identify people’s faces, that she could not see a gun in the footage, and that she could not clearly see any of the events that occurred inside Olo-wo-Ake’s vehicle. Though Detective Brown attempted to obtain a readable copy of the video, each attempt failed. As the ‘record reflects, the business retained control over its video equipment, which eventually recorded over the footage relevant to Olowo-Ake’s shooting.
¶ 48. Based on these circumstances, the record reflects that Detective Brown never possessed the actual surveillance video. *53 Rather, at most, Detective Brown possessed only an unreadable copy of the video on her jump drive. As a result, the evidence does not satisfy the first prong of the test since the State never possessed evidence with an apparent exculpatory value that it failed to preserve. See id.
¶ 49. The evidence also fails to satisfy the third prong of the test and to show that the State acted in bad faith by intentionally causing the loss or destruction of the surveillance video. The record reflects no evidence that the State acted fraudulently or with a desire to conceal the truth. See Bell v. State, 963 So.2d 1124, 1137 (¶ 40) (Miss.2007). Instead, the record indicates that Detective Brown attempted to obtain the surveillance video in k readable format, but after several unsuccessful attempts, she learned that the business’s equipment had recorded over the old footage.
¶ 50. Thus, because Tillis fails to meet the test set forth above and to show that the State violated his due-process rights by losing or destroying evidence with an apparent exculpatory value, we find no merit to this argument. See Freeman, 121 So.3d at 895 (¶ 16).
b. The circuit court erred by refusing to give a jury instruction on spoliation.
¶ 51. Tillis also argues that, at the very least1, the circuit court should have given his jury instruction on spoliation of the evidence. When reviewing a party’s challenge to jury instructions, our standard of review is well settled:
Jury instructions are to be read together and- taken as a whole with no one instruction taken out of context. A defendant is entitled to have jury instructions given [that] present his theory of the case[;] however, this entitlement is limited in that the court may refuse an instruction [that] incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.
Murray, 849 So.2d at 1287 (¶ 22).
¶ 52. As the record reflects, the circuit court judge refused to give Tillis’s instruction because she found no evidence that the State committed intentional wrongdoing or intentionally failed to disclose the surveillance video. Upon review of this issue, we find no abuse of discretion by the circuit court’s refusal to give Tillis’s spoliation instruction. See id. at (¶ 23). Therefore, this argument lacks merit.
c. The circuit court erred by dénying Tillis’s right to a complete trial transcript.
¶ 53. Tillis also contends that portions of the trial were not fully recorded in the trial transcript. In his brief,' he specifically references an off-the-record bench conference that occurred immediately before the coroner’s testimony and that he claims failed to be included in the record.[18] According to Tillis’s brief, he objected during this bench conference to the coroner’s testimony on the grounds that the coroner lacked the proper qualifications to testify, *54 that the State failed to provide Tillis with a copy of the coroner’s report prior to trial, and that the testimony violated his right to confront the witnesses against him.
¶ 54. This Court has previously found that “an incomplete trial record, of itself, does not constitute reversible error.” Stapleton v. State, 790 So.2d 897, 899 (¶ 9) (Miss.Ct.App.2001). “Rather, the defendant complaining of an incomplete record must demonstrate some prejudice arising out of the omission of some part of the record.” Id.
¶ 55. The record reflects that the objections Tillis claims he raised during the allegedly missing off-the-record bench conference were also raised at other times during on-the-record exchanges included in the transcript. One of these on-the-record exchanges occurred prior to the alleged unrecorded bench conference, and another occurred after the coroner’s testimony. These recorded exchanges reflect that Tillis raised and set forth in the record the same objections that he contends he made during the off-the-record bench conference. We therefore find that Tillis fails to show prejudice resulting from any alleged off-the-record conferences or comments since the statements “were also made on the record and his counsel had the opportunity to argue his contrary position.” Griffith v. Pell, 881 So.2d 227, 232 (1123) (Miss.Ct.App.2003).
¶ 56. We also recognize that, to preserve the issue for appellate review, Tillis bore the responsibility to ensure that a record was made in the court below of his objections. See Moore v. State, 914 So.2d 185, 189 (¶ 9) (Miss.Ct.App.2005). We find from our review of the record that Tillis failed to follow the procedures set forth in Rule 10 of the Mississippi Rules of Appellate Procedure to prepare a statement of the evidence that he claimed was not reflected in the trial transcript.
¶ 57. Based on our review of the record, we find no error resulting from the denial of Tillis’s right to a complete trial transcript. As a result, this argument lacks merit.
IV. Whether the circuit court erred by denying Tillis’s request for Olowo-Ake’s NCIC report.
¶ 58. “In regard to matters relating to discovery, the trial court has considerable discretion. The discovery orders of the trial court will not be disturbed unless there has been an abuse of discretion.” Haggerty v. Foster, 838 So.2d 948, 960-61 (¶ 35) (Miss.2002) (quoting Dawkins v. Redd Pest Control Co., 607 So.2d 1232, 1235 (Miss.1992)). This next assignment of error addresses whether it is within the State’s 'duty to produce a prior criminal record without a showing of the record’s relevance,[19] In the present case, to examine Tillis’s argument that the circuit court erred by denying his request for production of Olowo-Ake’s NCIC report, we must determine whether Tillis offered evidence to support his request that the desired NCIC report was material and exculpatory. See Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct 1194, 10 L.Ed.2d 215 (1963); URCCC 9.04.
¶ 59. Before Tillis’s trial began, his attorney .asked the circuit court to order the State to provide the defense with several NCIC reports, including one on the victim, Olowo-Ake. The defense argued that it wanted the NCIC report to “just give us an opportunity to explore *55 [Olowo-Ake’s] background to see whether or not he has been involved or charged with anything that’s similar to what the State’s witnesses allege [occurred] on [the day of the shooting].” As the record reflects, Tillis offered the circuit court no information regarding prior behavior by or convictions for Olowo-Ake that demonstrated Olowo-Ake possessed a propensity for violence. As a result, Tillis failed to show that the requested NCIC report contained any material and exculpatory evidence. After hearing the parties’ arguments on the issue, the circuit court judge denied Tillis’s request for Olowo-Ake’s NCIC report.
¶60. As the record reflects, Tillis testified at trial that he acted in self-defense and that Olowo-Ake initiated the altercation. Because he asserts a theory of self-defense, Tillis argues on appeal that evidence of Olowo-Ake’s character was relevant.[20] He further argues that he was entitled to Olowo-Ake’s NCIC report to see whether Olowo-Ake committed previous acts of aggression that could support Tillis’s claim that Olowo-Ake acted as the initial aggressor in their altercation.
¶ 61. As discussed, however, Tillis failed to proffer any evidence of past behavior by or convictions of Olowo-Ake that demonstrated a history of violence. Tillis therefore failed to .show that the NCIC report constituted material or exculpatory evidence. Tillis also failed to show that the State possessed or withheld any evidence that was favorable to him or material to his case. See URCCC 9.04 (discussing the State’s duty of disclosure). See also United States v. Pelullo, 105 F.3d 117, 124 (3d Cir.1997) (finding that disclosure was required because the withheld evidence was both favorable to the defendant and material).
 ¶62. In reviewing this assignment of error, we acknowledge the United States Supreme Court’s holding “that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.” Brady, 373 U.S. at 87, 83 S.Ct. 1194. Evidence is material “if there is a reasonable probability that, had the evidence been disclosed to the défense, the result of the proceeding would have been different. A ‘reasonable probability’ is a probability sufficient to undermine confidence in the outcome.” United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (superseded by constitutional' amendment on other grounds). “Favorable evidence includes items -that are either directly exculpatory *56 or can be used for impeachment purpose.” Manning v. State, 884 So.2d 717, 725 (¶ 22) (Miss.2004) (citation omitted). To establish a Brady violation, a defendant must first show “that the [State] possessed evidence favorable to the defendant....” Id. (citation omitted).
¶ 63. Regarding Tillis’s request for Olo-wo-Ake’s NCIC report, the record reflects that Tillis failed to provide an evidentiary-basis to support his request or to show that the State possessed or refused to disclose any favorable or material information. As a result, the record reflects no violation of either Brady or Rule 9.04. See Culp v. State, 938 So.2d 264, 283 (¶¶ 69-71) (Miss.2005) (holding that the disclosure of grand jurors’ identities was not required where the defendant failed to show the evidence was material). We therefore find no abuse of discretion by the circuit court’s denial of the request. This argument lacks merit.
V. Whether Tillis should have been acquitted as a matter of law pursuant to the Weathersby rule.
¶64. In his argument that the circuit court judge should have granted his motion for a JNOV, Tillis cites Weathersby v. State, 165 Miss. 207, 147 So. 481 (1933), and he argues that, pursuant to the Weathersby rule, he was entitled, to an acquittal. For the sake of clarity, we address Tillis’s argument regarding Weath-ersby separately from his argument that the evidence was legally insufficient to support his conviction.
¶ 65. Tillis’s brief asserts that “the only persons who observed.the entire altercation [at the Texaco] were Tillis and ... Evern.” Tillis contends that the testimony he and Evern provided was reasonable, consistent with the physical evidence, and not materially contradicted by testimony from Singleton or Lott. Tillis further argues that Singleton-was neither a credible nor a reliable witness for the State and that “no reasonable juror could find Singleton’s testimony credit-worthy and base a verdict on Singleton’s testimony to find Tillis guilty beyond a reasonable doubt.” Tillis therefore argues that, pursuant to the Weathersby rule, this Court should accept Tillis’s and Evern’s testimony “as true' since neither the reliable testimony nor [the] physical evidence contradicted their testimony on any material point.”
1166.. In Weathersby, our supreme court held:
[W]here the defendant or the defendant’s witnesses are the only eyewitnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by,a credible witness or witnesses for the [S]tate, or by physical facts or by the facts of common knowledge.
Weathersby, 165 Miss. at 209, 147 So. at 482 (citations omitted).
¶67. On appeal to this Court, Tillis admits that he was not the only eyewitness to Olowo-Ake’s shooting. Instead, his brief asserts that Evern, a witness for the State, also saw the entire sequence of events at the Texaco. Tillis also raises no dispute as to the evidence showing that Singleton and Lott witnessed part of the altercation at the Texaco. Rather, his argument focuses on his assertions that Singleton failed to constitute a credible witness and that Singleton’s and Lott’s testimony failed to materially contradict Tillis’s own trial testimony. Therefore, the facts of this case fail to support ah application of the Weathersby rule since eyewitnesses to the shooting, other than just Tillis, existed and -since Tillis’s arguments pertain to credibility *57 and weight of the testimony from the various witnesses.[21]
¶ 68. Upon our review of the record, we find that the State’s witnesses substantially contradicted Tillis’s testimony. Tillis asserts that Olowo-Ake pulled a gun on him and that he and Evern were “the only persons who observed the entire altercation” at the Texaco. Despite Tillis’s assertions, however, none of the other witnesses, including Evern,' saw Olowo-Ake with a weapon. According to Evern’s testimony, Tillis and Olowo-Ake began fighting, he saw Tillis in possession of a gun, and then Tillis shot Olowo-Ake twice.
¶ 69. While Lott and Singleton failed to witness the entire sequence of,events leading to the shooting, the record reflects that their trial testimony remained consistent as to what they claimed they witnessed. Furthermore, both men’s testimony eon-tradictéd Tillis’s testimony. Both men testified that Tillis and Olowo-Ake fought and that Olowo-Ake appeared to be in a defensive position. Lott and Singleton also both testified that Tillis had a gun in his possession. Singleton further testified -that he saw Tillis hit Olowo-Ake, grab Olowo-Ake by his shirt and throw him inside the truck, and then shoot Olowo-Ake. • According to Singleton’s testimony regarding his line of sight, he was standing beside the truck at the time of the shooting and could see clearly inside the vehicle. Based on this testimony, the record reflects that Tillis failed to constitute the sole eyewitness to Olowo-Ake’s shooting and that other witness testimony materially contradicted Tillis’s testimony.
¶70. This Court also recognizes that “[t]he credibility of witness testimony is the province of the jury.” Price v. State, 892 So.2d 294, 297 (¶ 15) (Miss.Ct.App.2004). “The Mississippi Supreme Court has repeatedly held that the jury is responsible for judging the credibility of witnesses and the weight that should be attached to their testimony.” Id. (citation and internal quotation marks omitted). Therefore, while Tillis asserts that Singleton was not a reliable witness, it was clearly within the jury’s province to determine how much weight and credibility to afford to Singleton’s testimony and to the testimony of other witnesses at trial.
¶ 71. Because the State presented testimony from other eyewitnesses that materially contradicted Tillis’s testimony, the Weathersby rule fails to apply to this case. See Weathersby, 165 Miss. at 209, 147 So. at 482. Therefore, this issue lacks merit.
VI. Whether there was sufficient evidence to support Tillis’s conviction.
¶ 72. Tillis also argues that the circuit court judge erred by not granting his motion for a JNOV. In making this argument, Tillis asserts that there was insufficient evidence to support his conviction. He contends that the evidence instead supported his testimony that he acted in justifiable self-defense.
¶ 73. A motion for a JNOV challenges the legal sufficiency of the evidence. Townsend v. State, 939 So.2d 796, 801 (¶ 23) (Miss.2006). In Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005), our supreme court established the following standard of review for legal sufficiency of the evidence:
In Carr v. State, 208 So.2d 886, 889 (Miss.1968), we stated that in considering whether the evidence is sufficient to sustain a conviction in the face of a motion for [a] directed verdict or for [a *58 JNOV], the critical inquiry is whether the evidence shows “beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.”
¶ 74. The supreme court further stated:
Should the facts and inferences considered in a challenge to the sufficiency of the evidence point in favor of the defendant on any element of the offense with sufficient force that reasonable [jurors] could not have found beyond a reasonable doubt that the defendant was guilty, the proper remedy is for the appellate court to reverse and render. However, if a review of the evidence reveals that it is of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded [jurors] in the exercise of impartial judgment might reach different conclusions on every element of the offense, the evidence will be deemed to have been sufficient.
Bush, 895 So.2d at 843 (¶ 16) (internal citations and quotation marks omitted).
¶ 75. Our caselaw provides that the State bears the burden of proof at trial to establish each element of the offense. Heidel v. State, 587 So.2d 835, 843 (Miss.1991). “The defendant is not required to prove he acted in self-defense, and, if a reasonable doubt of his guilt arises from the evidence, he must be acquitted.” Id. (citations and internal quotation marks omitted). The jury found Tillis guilty of manslaughter. Therefore, as our caselaw establishes, to prove the crime of manslaughter, the burden fell upon the State to prove beyond a reasonable doubt that Tillis did not act in necessary self-defense when he shot Olowo-Ake. See Hammond v. State, 119 So.3d 1074, 1078 (¶ 15) (Miss.Ct.App.2013).
 ¶ 76. Mississippi Code Annotated section 97-3-15(1)(e)-(f) (Rev. 2006) defines justifiable homicide as the killing of a human being in the following circumstances:
When committed by any person in resisting any attempt unlawfully to kill such person or to commit any felony upon him, or .... [w]hen committed in the lawful defense of one’s own person ..., where there shall be reasonable ground to apprehend a design to commit a felony or to do some great personal injury, and there shall be imminent danger of such design being accomplished^]
“[T]he issue of justifiable self-defense presents a question of the weight and credibility of the evidence, rather than sufficiency, and is to be determined by [the] jury.” Jones v. State, 39 So.3d 860, 865 (¶ 28) (Miss.2010) (citation omitted). Furthermore, “any factual disputes are properly resolved by the jury and do not mandate a new trial.” Id. (citation omitted).
¶77. In the present case, the jury heard both Tillis’s version of events and the testimony of the State’s witnesses. Tillis testified that he accidentally shot Olowo-Ake while justifiably defending himself in an altercation. The jury also heard from various witnesses for the State that Olowo-Ake was not known to carry a gun, that they saw no weapon with him at the Texaco, and that Olowo-Ake appeared to be the one defending himself during the altercation. The jury further heard testimony from the State’s witnesses that Tillis behaved aggressively toward Olowo-Ake, hitting him and eventually firing two shots at him.
¶ 78. As previously stated, the jury resolves factual disputes. See Jones, 39 So.3d at 865 (¶ 28). After considering all *59 the testimony presented at trial, the jury found Tillis guilty of manslaughter. Viewing the evidence in the light most favorable to the State, we find that the record reflects that sufficient evidence was presented for a competent juror to find beyond a reasonable doubt that Tillis was guilty of manslaughter and was not acting in reasonable self-defense. See Bush, 895 So.2d at 843 (¶ 16). Therefore, we find no error in the circuit court judge’s denial of Tillis’s motion for a JNOV. Accordingly, this issue lacks merit.
VII. Whether the verdict was against the overwhelming weight of the evidence.
¶ 79. Tillis also argues that the circuit court judge erred by denying his motion for a new trial because the guilty verdict was against the overwhelming weight of the evidence. This Court reviews the denial of a motion for a new trial based on the weight of the evidence, and we weigh the evidence in the light most favorable to the verdict. McCallum v. State, 996 So.2d 189, 194-95 (¶ 28) (Miss.Ct.App.2008). We also accept as true all evidence in favor of the State, and we reverse only if the circuit court abused its discretion. Price, 892 So.2d at 297 (¶ 11). “[W]e will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” McCallum, 996 So.2d at 194 (¶ 23) (citation omitted).
¶ 80. The evidence in the record reflects that Tillis and Olowo-Ake fought and that Tillis shot Olowo-Ake. The evidence also shows that Olowo-Ake later died as a result of his injury. Although Tillis testified at trial that the shooting occurred as he allegedly justifiably defended himself from Olowo-Ake, the State presented contradictory evidence. Weighing the evidence presented at trial in the light most favorable to the verdict, and accepting as true all evidence in favor of the State, we cannot find that the verdict was so against the weight of the evidence that it constituted an unconscionable injustice. See Price, 892 So.2d at 297 (¶ 11); McCallum, 996 So.2d at 194 (¶ 23). Therefore, we find no abuse of discretion in the circuit court judge’s decision to deny Tillis’s motion for a new trial. This issue also lacks merit.
VIII. Whether the circuit court erred by refusing to allow Tillis to physically demonstrate how the shooting occurred.
¶ 81. During Tillis’s direct examination, his attorney asked the circuit court judge to allow Tillis to demonstrate what occurred during his struggle with Olowo-Ake. The circuit court judge denied the request and stated, “Let’s see if he can explain and the jury can follow him[.]” Tillis proceeded to describe the shooting, and the defense failed to raise the issue a second time. On appeal, however, Tillis argues that the circuit court judge erred by refusing to allow him to physically demonstrate how the shooting occurred.
¶82. “The admission of reasonably necessary and material demonstrative evidence is within the discretion of the trial court.” Lewis v. State, 725 So.2d 183, 189 (¶ 26) (Miss.1998) (citations and internal quotation marks omitted).[22] “[B]ecause the types of demonstrative evidence and the purposes for which it is sought to be introduced are extremely varied, it is generally viewed as appropriate to accord the trial judge broad discretion in ruling upon the admissibility of many *60 types of demonstrative evidence.” Id. at (¶ 27) (citation and internal quotation marks omitted). “[Unless] that discretion is so abused as to be prejudicial to-the accused, this Court will not disturb the trial court’s ruling on appeal.” Hansen v. State, 592 So.2d 114, 132 (Miss.1991) (citations and internal quotation marks omitted).
¶ 88. After reviewing the record, we find no abuse of discretion in the circuit court’s denial of Tillis’s request. See Lewis, 725 So.2d at 189 (¶ 26). The circuit court judge instructed Tillis to try to explain the shooting to the jury, and the record reflects that Tillis had no apparent difficulty responding to his attorney’s questions. Tillis provided a verbal description of the altercation from his perspective, which allowed him to present his theory of the case to the jury. After providing this verbal description, Tillis failed to reassert his request to physically demonstrate how the shooting occurred. Because Tillis fails to show prejudice resulting from the denial of his request, or that his testimony proved insufficient to describe the events surrounding Olowo-Ake’s shooting, we find that this argument lacks merit.
IX. Whether the State committed prosecutorial misconduct by eliciting improper witness testimony.
¶ 84. Tillis also asserts that pros-ecutorial misconduct occurred when the State elicited testimony from Detective Brown about Frederick Branch, a potential witness who was murdered several days after Olowo-Ake’s shooting. Tillis argues that this conduct violated the circuit court’s ruling specifically prohibiting such testimony. On appeal, Tillis contends that the- prosecutorial misconduct provides a basis for a new trial.
¶ 85. “The standard of review for prosecutorial misconduct has been' clearly established.” Goodin v. State, 787 So.2d 639, 653 (¶ 41) (Miss.2001). “Where prose-cutorial misconduct endangers the fairness of a trial and the impartial administration of justice, reversal must follow.” Id. (citation omitted).
¶ 86. During direct examination, the State asked Detective Brown whether there was someone she wanted to interview in the course of her investigation but was unable to interview. Detective Brown responded that she was unable to interview Branch. The State then asked why Detective Brown was unable to interview Branch, but before Detective Brown answered, Tillis objected. Outside the jury’s presence, the State told the circuit court judge that it expected Detective Brown’s answer to be that “[s]he couldn’t interview [Branch] because he was deceased.” Tillis objected to this testimony because “[i]t [would] cause the jury to speculate that[,] if [Branch is] dead, then maybe [Tillis] had something to do with it.”
¶ 87. Based on the parties’ arguments, the circuit court judge ruled as follows:
The jury can’t suspect. People die [every day], and it has nothing to do with another individual. Now, if that’s all you.were going to cover, then I’ll overrule the objection, but I’ll limit that to-that only. And I’ll direct the witness that [if] the answer ... is that he was deceased ... that she should not go any further into any other information about Frederick Branch.
¶ 88. When the trial resumed, the State asked Detective- Brown why she was unable to interview Branch, and she responded, “He was murdered on the 18th *61 of April [2010].”[23] Tillis failed to contemporaneously object to Detective Brown’s statement. After the State’s next witness began to testify, the defense raised an objection to his testimony, and during the conference that followed, the defense also objected to Detective Brown’s statement that Branch “was murdered[.]” The de-, fense explained that it failed to raise the objection earlier because it had “not want[ed] to turn the jurors against us by objecting [and] making them suspect that we’re trying to hide something.” The defense explained that it now wanted to object to Detective Brown’s statement and to move for- a mistrial. After -considering Tillis’s objection, the circuit court judge stated that the objection was “overruled in terms of a mistrial.”
¶ 89. As the record shows, the circuit court judge ruled that the State could ask Detective Brown why she was unable to interview Branch. In light of the circuit court judge’s ruling on'the issue, Detective Brown may have answered'' the State’s question improperly, but the record fails to support Tillis’s claim that the State elicited or encouraged an improper answer. Based on our review of the record, we find that Tillis has failed to demonstrate any prosecutorial misconduct that would rise to the level of “endangering] the fairness of [his] trial and the impartial administration of justice.” Goodin, 787 So.2d at 653 (¶ 41). Therefore, this assignment of error lacks merit.
X. Whether cumulative error requires the reversal of Tillis’s conviction and sentence.
¶ 90. In his final assignment of error, Tillis argues that the cumulative effect of multiple errors requires the reversal of his conviction and sentence. “This Court may reverse a conviction and sentence based upon the cumulative effect of errors that independently would not require reversal.” McLaurin v. State, 31 So.3d 1263, 1270 (¶ 35) (Miss.Ct.App.2009) (citation omitted). “However, where there was no reversible error in any part, there is no reversible error to the whole.” Id. (citation and internal quotation marks omitted). Because each of Tillis’s previous arguments lacks merit, we find no cumulative error in this case that requires the reversal of Tillis’s conviction and sentence. Accordingly, this issue also lacks merit.
¶ 91. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT OF CONVICTION OF MANSLAUGHTER AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS AND FAIR, JJ., CONCUR. BARNES, J„ CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. MAXWELL AND JAMES, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. . , ■

. As explained in Tillis’s brief, these reports contain information regarding a person’s criminal history.

. Weathersby v. State, 165 Miss. 207, 209, 147 So. 481, 482 (1933).

,The record reflects that, prior to the shooting, Singleton only knew Tillis by sight and not by name. Singleton testified that he met Tillis several days prior to the events of April 11, 2010, but he only learned Tillis’s name after the shooting occurred. Even so, Singleton positively identified Tillis as Olowo-Ake’s *43 shooter from a photo lineup provided by police after the shooting. Singleton again identified Tillis as the shooter while testifying at Tillis’s trial.

. See Webster ex rel. Webster v. Nat’l Heritage Realty, Inc., 5:07-CV-101(DCB)(JMR), 2009 WL 485698, at *1 (S.D.Miss. Feb. 26, 2009) (citing Mississippi Rule of Evidence 803(8) for the finding that "[c]oroner’s [r]eports are routinely admissible under the public[-]record exception to the hearsay rule”).

. See Miss.Code Ann. § 41-61-63(2) (Rev. 2013) (providing that medical examiners shall, “[u]pon receipt of notification of a death affecting the public interest, make inquiries regarding the cause and manner of death, reduce the findings to writing[,] and promptly make a full report to the State Medical Examiner on forms prescribed for that purpose”).

. See id.

. See Murray v. State, 849 So.2d 1281, 1288 (¶ 29) (Miss.2003) ("The general rule is that a defendant cannot complain of the evidence which he himself brings out.” (citation omitted)); Lewis v. State, 445 So.2d 1387, 1389 (Miss.1984) (finding that the defendant could not complain on appeal about the admission of testimony where the defendant elicited the testimony during his cross-examination of the witness). See also M.R.E. 611(a) ("The court *47 shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence•

. See Webster, 2009 WL 485698, at *1; M.R.E. 803(8).

. See Murray, 849 So.2d at 1288 (¶ 29); Lewis, 445 So.2d at 1389.

. See also Birkhead v. State, 57 So.3d 1223, 1231-32 (¶¶ 31-32) (Miss.2011) (holding that a death certificate was admissible under the hearsay exception for records of vital statistics).

. See Webster, 2009 WL 485698, at *1; M.R.E. 803(8)-(9).

. See Miss.Code Ann. § 41-61-63(2).

. See Murray, 849 So.2d at 1288 (¶ 29); Lewis, 445 So.2d at 1389.

. As previously discussed, the coroner’s report provides the manner and cause of death and constitutes an official public record. See Miss. Cod. Ann. § 41-61-63(2).

. See M.R.E. 611(a).

. But cf. Doby v. State, 557 So.2d 533, 539 (Miss.1990) ("In cases where the prosecuting attorney has remarked that the defendant did not call a particular witness, we have often found the comment to 'etch into the minds of the jurors the impression’ that the missing witness would have testified adversely to the defendant....”); Madlock v. State, 440 So.2d 315, 317-18 (Miss.1983) (finding reversible error where the prosecutor commented on the defendant’s failure to call a witness who presumably would have supported the defendant's story).

. See Foley, 914 So.2d at 689 (¶ 24); Dunaway, 551 So.2d at 163. See also Tate v. State, 912 So.2d 919, 926 (¶ 18) (Miss.2005) ("[T]his Court has held that errors may be deemed harmless where the same result would have been reached had they not existed.” (citation and internal quotation marks omitted)).

. Although not specifically referenced in Til-lis’s brief, the record also reflects that. Tillis's trial attorney alleged other omissions from the trial transcript. During a post-trial hearing, Tillis's attorney informed the circuit court judge that she also objected to the State's request that Tillis show his teeth to the jury. As our caselaw acknowledges, however, "the Mississippi Supreme Court [has] adopted the United States Supreme Court’s position that .the Fifth Amendment only prohibited the compelled production of evidence, not evidence which identifies physical characteristics of the defendant." Hubbert v. State, 759 So.2d 504, 507 (¶ 10) (Miss.Ct.App.2000) (citing Porter v. State, 519 So.2d 1230, 1232 (Miss.1988)).

. See Sanders v. State, 439 So.2d 1271, 1275 (Miss.1983) (superseded by statute on other grounds) (finding no merit to the defendant's claim that reversible error occurred because the State failed to disclose the prior criminal record of a witness).

. As our caselaw acknowledges, "[ejvidence of a victim’s character is ordinarily irrelevant.” Jenkins v. State, 912 So.2d 165, 173 (¶ 32) (Miss.Ct.App.2005). However, ‘‘[e]vi-dence of a relevant trait of the victim's character may be introduced to show that the victim was the first aggressor.” Hester v. State, 841 So.2d 158, 163 (¶ 16) (Miss.Ct.App.2002) (citing M.R.E. 404(a)(2)). "When the character of a person is relevant, ‘proof may be made by testimony as to reputation or by testimony in the form of an opinion.' ” Jenkins, 912 So.2d at 173 (¶ 32) (quoting McGilberry v. State, 797 So.2d 940, 941 (¶ 7) (Miss.2001)). In addition,' “[w]hen the character of a person ‘is an essential element of a charge, claim, or defense,' specific instances of conduct are admissible.” Hester, 841 So.2d at 163 (¶ 16) (quoting M.R.E. 405(b)). "[I]t has been held that specific incidents demonstrating a victim’s propensity for violence are admissible when there is a claim of self-defense.” Id. (citing Newsom v. State, 629 So.2d 611, 614 (Miss.1993)). “The trait does not become relevant until some evidence of an overt act by-the victim against the defendant is introduced.” Id. at (¶ 17) (citing Womack v. State, 774 So.2d 476 (¶ 26) (Miss.Ct.App.2000)). “Once proving the act, the defendant- may then offer proof of the victim’s character.” Id. (citing Green v. State, 614 So.2d 926, 934 (Miss.1992)).

. See Price v. State, 892 So.2d 294, 297 (¶ 15) (Miss.Ct.App.2004) (recognizing that the credibility and weight of witness testimony lie within the province of the jury). -

. See also M.R.E. 611(a).

. The record reflects that Olowo-Ake’s shooting occurred' several days earlier oii April 11, 2010.